GODDARD *against* THE STATE OF CONNECTICUT:

IN ERROR.

A complaint for a breach of *Sabbath*, exhibited, by a tything-man, to a justice of the peace, is not an *information* within the 9th section of the 1st article of the constitution of this state; and consequently, the party accused is not, on the prosecution of such complaint, before the justice, constitutionally entitled to a trial by jury.

THIS was a complaint against *Joseph Goddard*, exhibited, by a tything-man, to *Mimas Ives,* Esq., a justice of the peace, for a breach of *Sabbath.* The delinquent, being brought before the justice, pleaded *not guilty,* putting himself upon the jury for trial; and he thereupon moved, that a jury be ordered and empannelled to try the cause. This was refused; and after a trial before the justice alone, he was convicted of the offence charged in the complaint. He then filed a bill of exceptions, and brought a writ of error in the superior court. The judgment of the justice was there affirmed; and the case, by motion in error, came before this court.

*Hungerford* and *Brewster*, for the plaintiff in error, contended, That the statute authorizing a conviction of the offence charged, by a justice of the peace, without a jury, was repugnant to the constitution of this state, *art.* 1. *s.* 9.; this being a prosecution *by information* within that section. In the first place, it is embraced by the definition or description of an information. An information is an accusation or complaint, by a public officer, (except in *qui tam* cases) against a person, for some criminal offence. *Bac. Abr. tit.* Information. A. 2 *Hawk. P. C.* 260. *Jac. Law Dict. verb.* Information. Here is an accusation or complaint answering precisely to this description. It is for a criminal offence, and made by a public officer—an *informing* officer. Secondly, it is identical in its nature and object with an information. 4 *Bla. Com.* 308 & seq. 3 *Reeve's Hist. Eng. Law,* 94. 4 *Id.* 151. Thirdly, it has all the formal requisites and the language of an information. Fourthly, it is generally so called. In our books the words information and complaint are used as convertible terms. 2 *Chitt. Gen. Prac.* 155. 2 *Sw. Dig.* 370. *Newell* v. *The State,* 2 *Conn. Rep.* 38. 40.

Before the higher courts, the offender may be tried on the original complaint exhibited to the justice ; but is he not constitutionally entitled, in that case, to a trial by jury ?

At the time of the adoption of our constitution, the proceeding against certain offences, *by judgment upon view,* without previous complaint or warrant, was well known to our law. *Holeomb* v. *Cornish,* 8 *Conn. Rep.* 375. The framers of the constitution did not intend to interfere with this proceeding; and therefore, in securing the right of trial by jury, in criminal cases, they used phraseology which excluded it. *Information* is not opposed to its synonym, *complaint,* but to *judgment upon view.*

*L. Church* and *T. Smith,* for the defendant in error, remarked, 1. That the application of the plaintiff in error to the justice for a jury to try the complaint, was in effect an attack upon his jurisdiction ; there being no law in this state authorizing a justice to empannel a jury in such a case. To hold, therefore, that the party complained of is entitled to a jury, is the same thing as to hold, that the justice cannot try him at all. The broad ground must be taken, that all our laws giv-

*Litchfield,*
June, 1838.

Goddard
*v.*
The State.

*Litchfield,*
*June, 1838.*

*Goddard*
*v.*
*The State.*

ing criminal jurisdiction to justices, especially if it be final, are void.

2. That the right of trial by jury, secured by the clause of the constitution applicable to this case, is a *qualified* right : it does not extend to *all* criminal prosecutions, but to those only, which are "by indictment or information."

3. That the complaint of a tything-man to a justice of the peace for a breach of *Sabbath*, is not an indictment or information. The 5th clause of the 9th sect. and the 21st sect. of the bill of rights, both relating to the same subject, should be construed together. By the latter section, it is provided, that "the right of trial by jury shall *remain* inviolate." The word "remain" is a relative term : it refers to the state of things existing at the time the constitution was adopted ; and declares, that the right then enjoyed, shall be enjoyed forever. In this way, we ascertain what is meant by the word "information," as used in the 9th section. It refers to the information immemorially preferred, by state's attorneys in *Connecticut*, to the superior and county courts—tribunals which have always been provided with a jury—and not to a complaint, brought by a tything-man, to a single magistrate, for a minor offence. *Beers* v. *Beers*, 4 *Conn. Rep.* 535.

Further ; the General Assembly has given a construction to these provisions of the constitution : it has declared its sense in respect to this matter, in a manner the most emphatic, by continuing vested in justices of the peace substantially the same powers which they possessed before the constitution was adopted, first, at the general revision of the statutes in 1821, and afterwards, by passing the criminal code of 1830. Neither the committees of revision nor the members of the legislature supposed, that by conferring upon justices the criminal jurisdiction which they have immemorially possessed, they were violating the constitution of the state.

4. That if these positions are untenable, the effect of the constitutional provision in question was, to annul the exceptions contained in the 4th sect. of the " Act concerning Delinquents," and to make all criminal cases, including prosecutions for " drunkenness, profane swearing, cursing and *Sabbath-breaking*," appealable to the next county court. *Stat.* 231. *tit.* 46. *c.* 1. *s.* 4. (ed. 1808.)

5. That if the right of appeal existed in this case, the plain-

tiff in error has nothing to complain of; for he made no motion for an appeal.

WILLIAMS, Ch. J. The plaintiff in error claims, that the statute authorizing a conviction by a justice of the peace, is unconstitutional, as the party accused is entitled to a trial by jury. That a justice of the peace has by statute the right to convict of this offence, as has been done, is not denied. By the 9th section of the bill of rights, it is provided, that "in all criminal prosecutions, the accused shall have a right to be heard by himself or by counsel; to demand the nature and cause of the accusation; to be confronted by the witnesses against him; and to have compulsory process to obtain witnesses in his favour; and in all prosecutions by indictment or information, a speedy, public trial, by an impartial jury." The first part of this section provides for the accused in *all* criminal prosecutions. The latter part of the section provides for all such prosecutions as are brought by *indictment* or *information.* The distinction is a marked one, and must have been so intended. The counsel for the plaintiff in error admits this; but claims, that the distinction is satisfied, by supposing that this section meant to deny a jury merely in those cases where a magistrate was authorized to convict *upon view* of an offence. In such cases, it is clear, that a jury cannot be demanded; nor are such proceedings of the class usually called *prosecutions.* When those are spoken of, reference is usually had to the formal accusation of the offender; which is entirely dispensed with, in these summary proceedings, as neither complaint nor warrant is a necessary attendant. 8 *Conn. Rep.* 379. Besides, a jury is required by this section, only when the prosecution is by indictment or information.

The real question then is, whether this complaint of the tything-man is an indictment or information, within the 9th section of the bill of rights. And here it is hardly necessary to observe, that in an instrument of this kind, defining the rights of the citizens and prescribing the duties of the rulers, where technical terms are used, it is to be presumed they are used in the technical sense, unless there be something to denote a contrary intent. Thus, when our statute speaks of murder or burglary, we look to the common law for the technical meaning of those terms, and we adopt that meaning. If

then, the words indictment or information have a well known meaning at the common law, we are to enquire not merely whether this complaint is not much like an information, but whether it is the information of the common law. An information differs from an indictment in little more than the source from whence it comes. And a complaint by a tything-man or grand-juror may, in its form, differ but little from the information of the attorney-general or the master of the crown office. But this fact will no more prove, that it is an information, than that the information of the attorney is an indictment. We must resort to authorities to see what is meant by these terms.

"An indictment," says *Blackstone*, "is a written accusation of one or more persons of a crime or misdemeanor, preferred to and presented on oath by a grand-jury ;" and by assent of twelve at least. 4 *Bla. Com.* 302. "Informations," says the same commentator, "are of two sorts ; first, those which are partly at the suit of the king and partly at that of a subject ; and secondly, such as are only in the name of the king." And the last "are of two kinds ; first, those which are truly and properly his own suits, and filed *ex officio* by his own officer, the attorney-general ; and secondly, those in which, though the king is the nominal prosecutor, yet it is at the relation of some private person or common informer ; and they are filed by the king's coroner and attorney, in the court of *King's Bench,* usually called the master of the crown-office, who is, for this purpose, the standing officer of the public." 4 *Bla. Com.* 308. An accusation, therefore, brought before a single magistrate, is not, within the definition of this writer, an information.

We must next enquire, whether by our common law, this process is recognized as an information. It has been attempted, by the counsel of the plaintiff in error, to show, that in its form and nature it partakes of the features of an information. And it is certainly true, that every accusation of one person by another to a magistrate, is information to that magistrate. But it is not, therefore, the information spoken of in the constitution, because it does not come from the source which gives it that character.

We have in each county an officer called the state's attorney, whose duty it is, to give information to the courts of offences committed within the county ; and accusations thus made

have always been denominated informations. We have other public officers, called grand-jurors and tything-men, elected in each town, whose duty it is to present offences committed within their town, to single ministers of justice. These accusations were, in our early statute, called *presentments*, and in common parlance, *complaints*. By an ancient statute, grand-jurors were required once a month to present all breaches of the law, of which they had cognizance, to the next assistant or justice of the peace, and upon neglect to make such presentment, to pay a fine. *Stat.* 45. (ed. 1702.) They were also ordered to *present* householders and others, spending their time idly and unprofitably. *P.* 53. And in the statute of limitations of those days, it is provided, that no person shall be indicted, presented, informed against or *complained* of, for certain offences, unless such indictment, presentment, information or complaint be made within one year. *P.* 57. And these prosecutions before single magistrates had been long known and distinguished by the appellation of *complaints*. And now, the modern statute has combined the terms of the ancient statutes with the more common phraseology, and directed grand-jurors to make " due presentment or complaint," &c.; which " presentment or complaint" shall be made to some justice of the peace, in the town where the offence was committed, or to the court having cognizance of the offence. *Stat.* 259. *tit.* 45. *s.* 2. So in the present statute of limitations, the word *complaint* is used as in the ancient statute. *Stat.* 311, 12. *tit.* 59. *s.* 11. The term *complaint*, then, is used in our statutes with reference to accusations not made by the grand-jury, so called, or the state's attorney.

If further proof was wanting, we might resort to our own commentators and philologists. In *England*, there are four modes of prosecution at the suit of the king, says *Blackstone ;* by presentment, indictment, information and appeal. In *Connecticut*, says Judge *Swift*, there are also four modes ; first, by complaint or presentment by a grand-juror, *which is authorized by statute and is unknown to the common law ;* secondly, by information by the state's attorney ; thirdly, by information *qui tam ;* fourthly, by indictments. 2 *Sw. Syst.* 374. And in *Webster's* Dictionary, the term *complaint* is said to be " an accusation or charge against an offender, made by a private person or an informer, to a justice of the peace, or

*Litchfield*,
June, 1838.

Goddard
*v.*
The State.

other proper officer, alleging that the offender has violated the law, and claiming the penalty due to the prosecutor. It differs from an information, which is the prosecution of an offendder, by the attorney or solicitor-general, and from a presentment or indictment, which are the accusation of a grand-jury." *Web. Dict. in verb.*

When then we find, that this is a proceeding not recognized by the common law as an information, and also find, that it is well known in our statutes, in our commentaries and dictionaries, and in common parlance, as a complaint; all of which must have been well known to those who framed our constitution ; the irresistible inference is, that these prosecutions by *complaint,* were not intended to be included in the terms *indictment* or *information.*

This view is also confirmed by the fact, that immediately after the adoption of the constitution, a committee was appointed to revise the statutes, with an express view to the alterations made necessary by the constitution, at the head of which was one who had long presided in this court; (*a*) since which another committee has been appointed to revise the criminal code, composed of one gentleman, then a judge of this court, (*b*) and another now a judge of the same court; (*c*) and none of the learned lawyers, and no member of the General Assembly, to whom these revisions were submitted, ever supposed the law under which this magistrate acted, inconsistent with the constitution.

It has been urged, with great plausibility, that these complaints by grand-jurors to single magistrates, may, in many instances, come before a higher court; and is not the accused then entitled to his trial by jury ? To this it is answered, certainly he is ; but not by virtue of this section of the bill of rights ; not because this is an information ; but by force of another section, (*viz.* the last) upon which the plaintiff in error does not choose to found his claim. " The right of trial by jury shall remain inviolate." *Art.* 1. *s.* 21. And if we refer to our ancient history, we shall find, that the right of trial by jury was by law given, at an early period, to all persons brought for delinquency to any of the county courts or court of assistants. *Stat.* 2. (ed. 1702.) And this provision has, in sub-

(*a*) Ch. J. *Swift.*       (*b*) Judge *Bristol.*       (*c*) Judge *Church,*

stance, remained ever since, and is now forever secured, by an article of the constitution.

This construction gives effect to both these sections of the bill of rights, and is entirely consistent with the common use of terms.   By the 9th section, all persons indicted or informed against, may have trial by jury ; and by the 21st section, all other persons, who, before that time, would, by the then existing laws, have right to such trial, have that right secured to them.   In other words, trial by jury is to remain inviolate.

We are therefore entirely satisfied, that the plaintiff in error has been deprived of no right, to which he was constitutionally entitled ; and that the constitution never intended to take from single magistrates the power of trying petty offences, which has been so long exercised by them, to the great advantage of the public.

There is no error in the judgment complained of.

In this opinion the other Judges concurred.

Judgment affirmed.