JOHN ERWIN AND WIFE vs. JAMES ENGLISH.

New Haven Co., Dec. T., 1888. PARK, C. J., CARPENTER, PARDEE,
LOOMIS and BEARDSLEY, Js.

There was appended to a deposition the following agreement signed by the
adverse counsel: "It is agreed that the above may be used in evidence,
subject to the objections noted." When the deposition was read in
evidence objection was made by the adverse counsel to a part of it, to
which no objection was noted upon it, and the court ruled that part of
it out. Held—

1. That the attorney had authority as such to make the stipulation.
2. That it was sufficient to cover and render admissible any inadmissible
matter in the deposition to which an objection had not been noted.

[Argued March 29th—decided April 22d, 1889.]

ACTION to recover the possession of land with rents and
profits; brought to the District Court of Waterbury, and
heard before *Bradstreet, J.* Facts found and judgment ren-
dered for the plaintiffs, and appeal by the defendant. The
case is sufficiently stated in the opinion.

*G. E. Terry,* for the appellant.

*J. O'Neill* and *R. E. Hall,* for the appellee.

BEARDSLEY, J. This is an action of disseisin brought
to the District Court of Waterbury.

The plaintiffs claimed title to the premises in question by
deed from one Cephalia P. Larkin, dated the 8th day of
May, 1884. The defendant claimed title by adverse posses-
sion.

The court found that Cephalia acquired the title to the
premises in 1861, and conveyed the same to the plaintiffs in
1884, but also found that the defendant and his grantor
"had openly and notoriously claimed, used and occupied
the land adversely as their own," from April 25th, 1863, to
the time of the trial, which was in 1887. But the court

also found that Cephalia was married to Thomas Larkin in 1860, and that he lived until 1882.

If the marriage of Cephalia was a valid one, her right of entry was not barred at the time of the commencement of the suit, it being within five years after the death of her husband. The defendant claimed that Thomas had a wife living at the time of his ostensible marriage to Cephalia, to whom he was married in 1843, and the only question made upon the trial of the case, so far as the record discloses, was whether such was the fact. To prove the former marriage the defendant offered in evidence the deposition of one Peter O'Neill Larkin, who he claimed was a son of Thomas by the marriage of 1843. A part of this deposition is as follows:

" Sometime in the year 1867 my mother wrote to Father Michael Lennon, parish priest of Geggan, who lived at Crossneghn, and who performed the marriage ceremony on the occasion of my father and mother, for a certificate of the marriage, and he returned to her the following certificate, and which is in his handwriting—which is as follows : ' I hereby certify that Patrick Larkin and Mary O'Neill were lawfully married according to the rights of the Roman Catholic Church, on the 10th of August, 1843. Witnesses present on the occasion, Henry McArdle and Ann O'Neill. Dated at Crossneghn, 16th Oct., 1867. MICHAEL LENNON, P. P., Guggan, County Armagh, Ireland.

" ' P. S. The above named emigrated to America some years ago. M. L.'

" My mother received this, and stated to me that it was correct. I had oftentimes previously heard her state when and where she was married, which also corresponded with this certificate. I am thoroughly conversant with the handwriting of Father Lennon, and know said certificate to be in his handwriting. My mother has often stated to me that it was Father Lennon who married her."

Cross-examined: " I do not remember the date that my mother wrote to Father Lennon for the certificate, except as my memory is refreshed by the date on the certificate.

At the time mother wrote for the certificate, we lived either in New York or Boston, I can't tell which; we lived in both places during that year. I think my mother wrote for the certificate because she anticipated trouble with my father. I have seen Father Lennon write. I saw him write every year from 1850 to 1860, from the time I was six years of age. I was in Ireland when I saw him write. I don't know that I saw the letter my mother wrote to Father Lennon, but quite likely I did."

At the bottom of the deposition was an agreement signed by the defendant's attorney, in these words:—"It is agreed that the above may be used in evidence in the above entitled cause, subject to the objections noted." No objection was noted in the deposition to the evidence quoted.

The court upon the objection of the plaintiff's counsel rejected this part of the deposition as evidence.

The defendants assign the following reasons of appeal among others:—"1st. That the court erred in rejecting the deposition of Peter O'Neill Larkin upon the question of marriage. 2d. That the court erred in excluding said deposition, the plaintiff having stipulated that it might be used on the trial of said cause."

It is not necessary to decide the question whether the part of the deposition quoted, standing by itself, is legal evidence. It is not such unless it appears from the certificate itself that the priest who signed it performed the marriage ceremony. The certificate does not so state in terms, and it is doubtful if that is its import.

But however this may be, the court should have disregarded the plaintiff's objection to the testimony and received it as evidence.

The attorney had implied authority to make the stipulation, and the defendant had a right to rely upon it in preparing his case for trial. It is quite probable that by reason of it the defendant omitted to procure other testimony which he would have had upon the trial.

There is error and a new trial should be granted.

In this opinion the other judges concurred.