JOHN ERWIN, ADMINISTRATOR, *vs.* JAMES E. ENGLISH.

New Haven & Fairfield Cos., Jan. T., 1892. ANDREWS, C. J., CARPENTER,
SEYMOUR, TORRANCE and FENN, Js.

Where titles are abbreviated in the signing of documents, and the abbrevi-
ation is one in common use or that can naturally be understood, the
court has a right to treat the abbreviated title as if it had been written
out in full.

And parol testimony has been held admissible to explain the meaning of
ambiguous abbreviations.

Where a marriage certificate was signed by a personal name, with the
words "M. of Gospel" appended, and it was offered in evidence to
prove the marriage of the parties named in it, with parol evidence that
it was the marriage certificate of the parties, it was held that the court
was justified in receiving the certificate in evidence, notwithstanding
the abbreviated title made use of.

The following copy from a marriage register of a parish in Ireland was
offered in evidence to prove the marriage of the persons named :—
"August, 1843. Patrick Larkin and Mary O'Neill. Witnesses, Henry
McArdle, Ann O'Neill." Held to have been properly rejected by the
court below.

In order to its admissibility it should have appeared that, under appropri-
ate headings in the marriage register, the date of the marriage and the
names of the parties had been entered by the officiating clergyman
together with his certificate attached to the record that he married
the parties named; and it should be further shown that he was duly
authorized to perform the marriage ceremony and was required to
keep a record of it.

The rule with regard to the mode of proof of the marriage is the same in
both civil and criminal cases.

Where a marriage is proved by competent evidence the law raises a pre-
sumption in favor of its legality, upon which the party can rely until
its illegality is proved.

Where it was proved that a man was married to a woman, and that seven-
teen years after he was married to another woman, and that at the
time of the second marriage the first wife was still living, it was held
that the second marriage would be presumed to be a legal one in the
absence of proof that there had not been a divorce from the first wife.

Marriage certificates are treated in this state as original documents, and
need not therefore be authenticated as copies.

[Argued January 26th—decided February 29th, 1892.]

ACTION for recovery of possession of land, with rents and
profits; brought to the District Court of Waterbury. The

original plaintiffs were John Erwin and wife; during the pendency of the suit Cephalia P. Larkin was admitted as a plaintiff, and, she dying before the trial, John Erwin entered as administrator of her estate, and, with his wife, withdrew individually from the case; so that, at the time of the trial the only plaintiff was John Erwin as administrator. The case was tried to the court before *Roraback, J.,* who made a finding of the facts and rendered judgment for the plaintiff. The defendant appealed. The case is sufficiently stated in the opinion.

*G. E. Terry,* for the appellant.

1. The certificate of marriage was offered in evidence, in connection with declarations of the plaintiff's intestate that it was her certificate of marriage. These statements are entirely immaterial, unless it is in fact a legal certificate of marriage and entitled to weight. The objections made to the introduction of this exhibit are two:—1st. That it did not appear upon the face of the certificate who was the authority signing the same. 2d. Nor that the signer of the same held any office which authorized him to perform such ceremony. The certificate purports to have been made in Ohio, and the court will undoubtedly take judicial notice as to those persons who are authorized by the laws of that state to perform the marriage ceremony. It purports to have been signed by "*L. B. Emley, M. of Gospel.*" "M. of Gospel," by itself constitutes no office and is meaningless unless something is supplied which would bring it within the statute. Our own court has held in the case of *Stanton* v. *Button,* 2 Conn., 527, that "a court cannot by intendment or construction fill a blank or supply a word; they can only decide on the meaning and import of the words made use of." The general rule, as we apprehend, in supplying omissions, is that the word or sentence must be such that nothing else could be supplied with any sense except that which would make them operative. The plaintiff would undoubtedly claim that the letter "M." stands for and indicates that the person signing the certificate was a minister of the gos-

pel; but it might as well be "missionary." *Cassidy* v. *Holbrook*, 81 Maine, 589; *U. States* v. *Morrissey*, 32 Fed. R., 147. There is no finding that Mr. Emley was in fact a minister of the gospel, or held any office which entitled him to perform the marriage ceremony. The declarations of the plaintiff's intestate are not that there was a marriage in fact performed, but simply that the document was what she called a marriage certificate. Her statement with reference thereto is entirely irrelevant. She might have innocently believed it to be a lawful certificate and that the party was authorized to perform the marriage ceremony.

2. The court should have admitted the depositions of James Craige and Patrick McGeeney, as establishing the first marriage. It will be claimed that nothing but very strict and positive proof will operate to invalidate a second ceremonial marriage. This we admit to be the rule laid down in criminal cases by this court in the case of *State* v. *Dooris*, 40 Conn., 145, but we claim that there is no finding of any such second ceremonial marriage other than the certificate we have just considered, and that the law in civil cases is entirely different. *Camden* v. *Belgrade*, 75 Maine, 126; *S. C.*, 78 id., 204; *Brower* v. *Brower*, 1 Abb. App. Dec., 214; *Emerson* v. *Shaw*, 56 N. Hamp., 418; *Homans* v. *Corning*, 60 id., 418; *Proctor* v. *Bigelow*, 38 Mich., 282; *Blanchard* v. *Lambert*, 43 Iowa, 228. It appears by these depositions that there was in fact a book kept by the parish priest, in which he entered marriages performed by him. It is true it does not appear that this was a record which by law he was required to keep. It, however, clearly appears that it was a book kept by the priest in his own handwriting of the marriages performed by him, that he was duly authorized by law to perform such ceremonies, and that he is since deceased. *Whitcher* v. *McLaughlin*, 115 Mass., 167; *Kennedy* v. *Doyle*, 10 Allen, 161; *Blackburn* v. *Crawfords*, 3 Wall., 175, 189; *Hyam* v. *Edwards*, 1 Dall., 1; *Kingston* v. *Lesley*, 10 Serg. & R., 383.

3. A copy of the decree of divorce was improperly admitted in evidence. This purports to be a judgment of a for-

eign jurisdiction, and, to render it admissible and of any avail, jurisdictional facts must appear on the face of the record. Where the want of jurisdiction appears the judgment is a nullity. *Coit* v. *Haven*, 30 Conn., 190.

4. The court has found that the plaintiff claimed that the court would presume, for the purpose of sustaining the second marriage, that the parties to the first marriage were lawfully divorced. The defendant contended that there was no such presumption unless founded upon proof. The court overruled the defendant's claim and held that if there was a lawful marriage in the first instance that marriage was dissolved and that the second marriage was legal. If this was a conclusion of fact, in view of the evidence set forth in the finding, we contend that the court was in error, unless this court is prepared to say that the marriage certificate was a valid and lawful certificate and therefore admissible in evidence, and that proof of a former marriage is required with the same strictness as in criminal cases. And the same ruling would be required to sustain the presumption of the court below if it was intended as a presumption of law.

*J. O'Neill* and *R. E. Hall*, for the appellee.

SEYMOUR, J. This is a complaint to obtain possession of the premises therein described, together with rents and profits. It was originally brought March 25th, 1885, by John Erwin and Mary Erwin, husband and wife. Subsequently Cephalia P. Larkin appeared, and by leave of the court was made a party plaintiff. She afterwards died, her death was suggested on the record, and said John Erwin entered, as her administrator, to prosecute as such administrator. At the term of the court when the case was tried John Erwin, in his individual capacity, and his wife Mary, were dropped as plaintiffs, and the case, with John Erwin, administrator of the estate of Cephalia P. Larkin deceased, as plaintiff, against James English, was tried.

The defendant, in his answer to the complaint, alleges that he has the title to the described premises by deed, and

also a title by prescription. He further alleges that the right of action stated in the complaint did not accrue within fifteen years next before the commencement of the suit. The plaintiffs replied that the plaintiff Cephalia P. Larkin, on the 20th of November, 1860, was, and ever since had been, a married woman, the wife of Patrick H. Larkin, who died December 31st, 1882 ; that the defendant's possession of the land did not commence, nor did the possession of his predecessors in the title commence, until after the marriage of the said Cephalia P. Larkin ; and that the possession of the defendant's grantor of said land commenced with the license and permission of Patrick H. Larkin, the husband at that time of the said Cephalia P. Larkin ; and the plaintiffs denied the allegation that the right of action did not accrue within fifteen years next before the commencement of the suit. The defendant denied all the allegations of the plaintiffs' reply, except that Patrick H. Larkin died December 31st, 1882, which was admitted.

Upon the trial, John Erwin as administrator having then become sole plaintiff, judgment was rendered for the plaintiff, and the defendant appealed.

The finding states that, to prove that Cephalia Larkin was married November 20th, 1860, the plaintiff offered a certificate of marriage, in connection with the declarations and a written statement of the said Cephalia that said document was her certificate of marriage with the said Patrick Larkin. The following is a copy of the certificate :—

"No. 177. The State of Ohio, Crawford County. I certify that I this day solemnized the marriage of Patrick Larkin with C. P. Bartlett. Witness my hand this 20th day of November A. D. 1860. Briceport, O. L. B. EMLEY, M. of Gospel."

To the introduction of this evidence the defendant objected, on the ground—"1st. That it does not appear upon the face of the certificate who the authority was signing the same. 2d. That it does not appear upon the face of the certificate that the signer of the same held any office which authorized him to perform such ceremony."

The court overruled the objections and admitted the evidence, the defendant excepting, and one of the defendant's reasons for appeal is founded upon the admission of the certificate.

Marriage certificates are treated in this state as original documents, and need not therefore be authenticated as copies. This one is not subject to the objection suggested by Judge BEARDSLEY in *Erwin et ux.* v. *English,* 57 Conn., 564, to a certificate in that case, that it does not appear from the certificate itself that the authority who signed it performed the marriage ceremony. The real objection is that the words " M. of Gospel," after the name of L. B. Emley, who signs the certificate, and therein certifies that he solemnized the marriage, are not admissible evidence that it was signed by a minister of the gospel. As already appears the declarations and written statement of the said Cephalia P., who had died before the trial, offered in connection with the certificate, and not objected to, were that the document was her certificate of marriage with Patrick Larkin.

We cannot hold as matter of law that the court erred in admitting the certificate in evidence. There is no law against using abbreviations, though their use is to be deplored in formal documents. The only practical rule we can suggest for such a case as this is, that if the abbreviation be one in common use, or such that it can naturally be understood, the court has a right to understand it, and to treat the abbreviated title as if it had been written in full. Parol testimony has been held to be admissible to explain the meaning of ambiguous abbreviations. It has been held that the characters "N. P." and " J. P." sufficiently indicate respectively " Notary Public " and " Justice of the Peace," and that their use does not vitiate a jurat. Other instances might be mentioned. As the case is presented to us the court below was justified in admitting the certificate.

For the purpose of proving that the marriage between Patrick Larkin and Cephalia P. Bartlett was illegal and void, the defendant offered the deposition of James Craige,

in connection with evidence that the Mary O'Neill therein named was living at the time of the marriage between said Patrick and said Cephalia. That deposition is as follows:—

"I, James Craige of Crossmaglen in County Armagh, Ireland, of lawful age, being duly cautioned and sworn, depose and say:—I was clerk in the Crossmaglen Roman Catholic chapel in the parish of Upper Creggan, County Armagh, Ireland, during the period that the Reverend Michael Lennon was parish priest of said parish, and am well acquainted with his handwriting. I say the following is a true and correct abstract of the marriage register of said parish of Creggan, which register was kept by and in the handwriting of the said Reverend Michael Lennon at the date of the celebration of the marriage hereinafter referred to, namely,—'August, 1843. Patrick Larkin and Mary O'Neill. Witnesses, Henry McArdle, Ann O'Neill.' And I further say that the said Reverend Michael Lennon was duly authorized by law to perform the said marriage ceremony at which he officiated as such parish priest as aforesaid. Subscribed, taken, etc."

To that portion of the deposition which purported to be a copy of the marriage register of the parish of Creggan, where it was claimed the marriage ceremony was performed, the plaintiff objected on the following grounds:—"1st. That it does not appear on its face to be a marriage. It may be that it was a mere record of declaration of intention.— 2d. That nothing appears on the face of the register showing that Michael Lennon married these parties.—3d. That no certificate appears on the face of the record that any one married them.—4th. That it does not appear that if these parties were married at the time, the person who married them was authorized by law to perform the marriage ceremony.—5th. That there is no evidence that this register was one required by law to be kept.—6th. That at most it is a mere declaration by a third person, unknown, not being under oath, and not in the form required by law to make it evidence or make it admissible.—7th. That it does not appear that they are the identical persons."

. Upon the authority of *State* v. *Dooris*, 40 Conn., 145, we think the purported copy of the marriage register was properly rejected. Indeed it is much less complete than the entries in that case. There is no signature of the officiating clergyman, nor does it appear that he, any where in the register, certified that he married the persons named therein. It is suggested that the case of *State* v. *Dooris* was an information for bigamy, and that of course the strictest proof is required as against one charged with crime. But when the proof depends upon the validity of the form of a marriage certificate or record of marriage, the same rules must prevail whether in a criminal or in a civil proceeding. In order to the admissibility of the record it should at least appear that, under appropriate headings in the marriage register, the date of the marriage, and the names of the parties, had been entered by the officiating clergyman, together with his certificate attached to the record that he married the parties whose names are therein entered. It should further be shown that he was duly authorized to perform the marriage ceremony and was required to keep a record thereof. We are not attempting to prescribe the requisites to a valid copy of a marriage register generally, but only to meet the questions involved in this case. Nor, of course, are we intimating that a marriage may not be satisfactorily proved in the absence of any certificate or copy of record.

If however the court had erred in excluding the copy of the marriage register, and if it also erred in admitting the copy of a decree of divorce granted in Indiana, September 14th, 1860, purporting to dissolve the marriage between said Patrick Larkin and Mary O'Neill, which was offered by the plaintiff and objected to by the defendant, yet the defendant was not injured by such errors. As against the duly proved marriage of Patrick Larkin and Cephalia P. Bartlett, November 20th, 1860, it was not enough for the defendant to prove that Patrick was married seventeen years before to Mary O'Neill. Proof of such previous marriage did not cast the burden upon the plaintiff of proving, either that

the former wife was dead, or, if living, that a legal divorce had been granted.

One of the plaintiff's claims, in reply to the defendant's claim of title by prescription, was, that on the 20th of November, 1860, she was, and ever since had been, a married woman, the wife of said Patrick, who died December 31st, 1882. She proved the marriage by competent evidence. Being proved, the law raises a presumption in favor of its legality, upon which she had a right to rely until its illegality was proved. *Semper præsumitur pro matrimonio.*

*The King* v. *The Inhabitants of Twining*, 2 B. & Ald., 386, was a case concerning the settlement of a pauper, and depended upon the legality of a second marriage. The court held that " the law always presumes against the commission of crime, and therefore, where a woman, twelve months after her first husband was last heard of, married a second husband, and had children by him, the sessions did right in presuming, *primâ facie*, that the first husband was dead at the time of the second marriage; and that it was incumbent on the party objecting to the second marriage to give some proof that the first husband was then alive."

It is stated in Bishop on Marriage & Divorce, vol. 1, sec. 457, that when a marriage has once been shown, however celebrated, whether regularly or irregularly, or however proved, whether directly or by circumstantial evidence, the law raises a strong presumption in favor of its legality; so that the burden is with the party objecting, throughout and in every particular to prove, against the constant pressure of this presumption of law, that it is illegal and void.

In the case at bar then, as it was presented to the court, there was no occasion for the plaintiff to prove the divorce, and it mattered not to the defendant that the Irish copy of marriage record was excluded, inasmuch as there was no offer on the part of the defendant to prove, in connection with proof of the first marriage and that the first wife was living at the date of the second marriage, that no divorce had ever dissolved her marriage with Patrick Larkin, all of which steps were necessary in order to overthrow the pre-

sumption of law in favor of the marriage of Patrick and Cephalia.

The finding in the case is not as full and explicit as could be desired, and upon the point of the nature of the defendant's occupancy is apparently contradictory with itself. We must, however, take the finding as a whole as stating that the defendant would have gained a title by prescription but for the marriage between Cephalia and Patrick Larkin.

This is a finding in favor of the defendant upon the question of title, and he can have no occasion to complain in that behalf, so far as appears from the record, and it leaves only the questions upon which we have already passed for our consideration.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.