The State *v.* Torello.

## THE STATE OF CONNECTICUT *vs.* MICHAEL TORELLO.

Third Judicial District, Bridgeport, October Term, 1925.

WHEELER, C. J., CURTIS, KEELER, MALTBIE and HAINES, Js.

The constitutional provision (Const. of Conn., Art. 1, § 9) that in all criminal prosecutions, the accused shall have the right "to be confronted by the witnesses against him" was designed to perpetuate in the fundamental law of this State the ancient principle of the common law that any accused shall have the right of opportunity to cross-examine those who testify against him.

This provision is not to be literally interpreted as an absolute guaranty of the opportunity for cross-examination in each and every instance; rather, it must be construed as a broad statement of the general principle, intended by its framers to include by implication those exceptions to the hearsay rule which were then recognized by statute or the common law and those which might in the course of time become recognized through the development of the common law or the creation of statute.

It is an established exception to the hearsay rule, existing at the time of the adoption of the Constitution and since broadly expanded, that statements made by public officials in a public record made for public use pursuant to law, are admissible in evidence to prove the facts recited therein. This exception rests upon the guaranty of trustworthiness inherent in the nature of statements so made, and upon the disturbance of public business which would result from summoning officials to attend as witnesses.

The rules of evidence relating to the admissibility of exceptions to the hearsay rule are the same in civil and criminal proceedings.

Section 2826 of the General Statutes provides that "copies of records of any analysis of liquor, made by a State chemist, certified by him, shall be legal evidence of the facts stated in such records." In the present case, which was a prosecution for violation of the liquor laws, the State offered in evidence a certified copy of the report of the State chemist to prove the alcoholic content of the liquor in question; to which the accused objected on the ground that its admission without the production of the chemist, who was living, would infringe his constitutional right to be confronted by the witnesses against him. *Held* that the trial court properly overruled the objection and admitted the evidence.

Argued October 27th—decided December 23d, 1925.

INFORMATION charging the accused with an unlawful sale of spirituous and intoxicating liquors, brought to the Court of Common Pleas in New Haven County and tried to the jury before *Simpson, J.*; verdict and judgment of guilty, and appeal by the accused. *No error.*

*Franklin Coeller,* for the appellant (the accused).

*Edwin S. Pickett,* Prosecuting Attorney, for the appellee (the State).

WHEELER, C. J. The accused was found guilty of the charge of having sold spirituous and intoxicating liquor in violation of our law. The principal question raised upon the appeal which the appellant argued before us, or which merits discussion by us, is a ruling upon evidence. The State offered evidence tending to show that the liquor purchased by the witness Struzinski had been placed in a bottle and sent to the State chemist for examination, and thereupon offered, in connection with the offer of the bottle and its contents, a certified copy of the record of the State chemist, for the purpose of proving the alcoholic content thereof. Counsel for the accused objected to the admission of the certificate upon the ground that the accused was entitled to be confronted by the witness (the State chemist), who was living, and to cross-examine him in order to determine the accuracy of his analysis. The court overruled the objection and admitted in evidence a part of the certificate, viz: "Sample, Number 204,775. What is the liquor. Not stated. Received from Officer Bahr. Date received, March 25, 1924. . . . Result of analysis. Alcohol by weight, 27.72 per cent. Alcohol by volume, 33.57. I hereby certify the above is a true copy of my records. James A. Newlands, State Chemist." The certificate was sworn to March

The State v. Torello.

26th, 1924, before a notary. To this ruling counsel for the accused duly excepted. The certificate was admitted in virtue of the provisions of General Statutes, § 2826, which reads: "Each State chemist shall analyze all samples of spirituous and intoxicating liquors presented to him for that purpose, by any legal officer; keep a record of all such samples, stating the kind of liquor, the name and address of the person from whom he received it, and the result of his analysis; . . . Copies of records of any analysis of liquors, made by a State chemist, certified by him, shall be legal evidence of the facts stated in such records."

Our Declaration of Rights, in Article First, § 9, provides that in all criminal prosecutions, the accused shall have the right "to be confronted by the witnesses against him," that is, the privilege of meeting the witnesses against him face to face. It is stated in absolute and unconditional terms. Literally it would prohibit the introduction of the testimony of any witness who was not produced in court. Its purpose was to mark, preserve, protect and perpetuate a right existing under the common law. It did not establish a new principle in criminal procedure; it merely secured an old principle whose earlier violation in England in political prosecutions had led to the incorporation of a similar provision in every State constitution up to this time. The common-law right to which this and like sections in the constitutions of the other States referred to, was the right of cross-examination. The fundamental purpose in securing this right, "to be confronted by the witnesses against him," was to give to the accused the right of opportunity to cross-examine the witnesses against him, the same right under a different name. 3 Wigmore on Evidence (2d Ed.) § 1397(1). The constitutional command placed this right beyond legislative abolition. Not the ab-

stract and unrestricted right of cross-examination, but the right as it then existed, with all of the exceptions known to the common law, or to be found in statute at that time. In this section the framers incorporated into our Constitution a rule of evidence which had become a part of the common law of our State. They did not attempt to recite the exceptions to this rule; they merely stated the general principle. It is as if the section read, the accused shall have the right to the opportunity of cross-examination. It did not attempt to restrict the right to the exceptions then existing, but contemplated that the hearsay rule, in the course of time, might come to include, through the development of the common law or the creations of statute law, additional exceptions. In *La Croix* v. *County Commissioners*, 50 Conn. 321, objection was made to the statute which gave to county commissioners final determination in the granting and revocation of liquor licenses, because no provision was made for a jury trial, in violation of Article First, § 21, of our Declaration of Rights, which provides that "the right of trial by jury shall remain inviolate." We held, and cited a large number of authorities in support of the proposition (p. 327): "And in other States, under constitutions guaranteeing the right of trial by jury, it has always been held not to mean to secure that right in all possible instances, but only in those cases which existed when the constitution was formed; and it is everywhere conceded that the legislature may create new offences by statute and make them triable by summary proceedings without a jury." See also *Goddard* v. *State*, 12 Conn. 448, 454. The construction of this provision of § 9, and of the rules of law which we have briefly summarized, are so universally accepted as to make unnecessary further comment. Additional authority will be found in *Commonwealth*

v. *Slavski,* 245 Mass. 405, 140 N. E. 465; *Jackson* v. *State,* 81 Wis. 127, 131, 51 N. W. 89; *State* v. *Dowdy,* 145 N. C. 432, 436, 58 S. E. 1002; *State* v. *Behrman,* 114 N. C. 797, 804, 19 S. E. 220; *Lambeth* v. *State,* 23 Miss. 322, 357; *Campbell* v. *State,* 11 Ga. 354, 373; *State* v. *McO'Blenis,* 24 Mo. 402, 416; *State* v. *Moore,* 156 Mo. 204, 56 S. W. 883; *State* v. *Heffernan,* 24 S. D. 1, 123 N. W. 87; *Summons* v. *State,* 5 Ohio St. 325, 341; *State* v. *Matlock,* 70 Iowa, 229, 30 N. W. 495; 1 Chamberlayne on Evidence, §§ 458-461, inclusive, and cases cited in notes; 3 Wigmore on Evidence (2d Ed.) §§ 1395-1397, inclusive, and cases cited in notes.

The admission of the record in evidence will not violate § 9 of Article First of our Declaration of Rights. Its admission depends upon whether it falls within one of the recognized exceptions to the hearsay rule. No objection is made to the certificate so far as it was admitted on account of lack of authentication, or that the facts it purported to recite were not required by this provision of the statutes to be recorded by the State chemist. The State chemist was a public officer sworn to the proper performance of his official duty. The making of this record and certificate were official acts, and presumptively show that the official acted in the performance of his duty. The statute makes this certificate admissible, and hence "removes almost entirely the necessity for judicial construction of the principles involved." 3 Wigmore on Evidence, p. 421, § 1643. The making of this certificate legal evidence of the facts required to be stated in the record kept by the State chemist is upon the same basis as the record of births, marriages and deaths, which, since 1664, has been required to be kept by a public official; and duly certified copies of these are admitted in evidence in proof of the facts required to be recorded. In *Murray* v. *Supreme Lodge, N. E. O. P.,* 74 Conn. 715, 718, 52

Atl. 722, the age of a mother at the time of her marriage, and at the time of the birth of her children, was attempted to be proved by duly certified copies from the registrar's records, and excluded upon the ground that the facts therein stated were hearsay. We held this evidence was admissible, saying: "Under the provisions of § 1089 of the General Statutes of 1888 [now General Statutes, § 5728], these records of the registrar can be proved by a copy thereof certified by him. It thus appears that the age of Ellen T. Murray, at the time of her marriage, and at the time of the birth of her children, was a fact which the law made it the duty of the registrar to ascertain, and to make and keep a record of the fact so ascertained. The record thus made was a public record, made by a public official, of a fact which the law required him to find and record, and the record was open to public inspection. The record thus made of this fact the defendant offered in evidence, both in the shape of the record itself, and of a duly certified copy thereof, and the court excluded it on the ground, substantially, that it was hearsay evidence. Now, unquestionably the evidence offered and excluded was hearsay evidence, for it was a statement made extra-judicially by one not under oath and not subject to cross-examination, and it was offered in proof of one of the facts stated in it, to wit, the age of Mrs. Murray. Statements so made are generally obnoxious to the hearsay rule, but to that rule there are many exceptions as well established as the rule itself; and among them is one admitting statements made by public officials in a public record made for public use pursuant to law. The books of the registrar, kept according to law, constitute a public, official register, and the statements contained therein, when relevant, are admissible in evidence as a clear exception to the hearsay rule. The necessity for the

existence of such an exception is found 'in the practically unendurable inconvenience of summoning public officers from their posts on the innumerable occasions when their official doings or records are to be proved in litigation;' and the general trustworthiness of such evidence is found in the circumstances under which the statements are made."

We made a like ruling in *Hennessy* v. *Metropolitan Life Ins. Co.*, 74 Conn. 699, 706, 52 Atl. 490. In *Creer* v. *Active Auto Exchange, Inc.*, 99 Conn. 266, 277, 121 Atl. 888, we found that a birth certificate, made in accordance with the laws of Michigan and duly certified by the person authorized so to do, was admissible in that State, and we held it would be admissible in this State when properly authenticated. See also *Gett* v. *Isaacson*, 98 Conn. 539, 120 Atl. 156; *Hellman* v. *Karp*, 93 Conn. 317, 321, 105 Atl. 678. In *Eva* v. *Gough*, 93 Conn. 38, 46, 104 Atl. 238, we held that a record of a marriage, from the records of an ecclesiastical society, was admissible under General Statutes, § 5733, which provided that the record, or copies, of the proceedings of any ecclesiastical society, certified by their respective clerks, shall be admissible evidence in all courts. See also *Erwin* v. *English*, 61 Conn. 502, 507, 23 Atl. 753. In admitting two tax lists in proof of what they contained, in *Whalen* v. *Gleeson*, 81 Conn. 638, 644, 71 Atl. 908, we said: "Such a certificate is prima facie evidence of the truth of what is contained in it, on the principle that every man acting officially shall be presumed to have done his duty, until the contrary appears." We admitted in evidence the records of the United States weather bureau kept at one place to show the state of the weather at a place only ten miles distant, where there was no such bureau, upon its appearing from expert testimony that the conditions were usually the same. *Mears* v. *New York, N. H. &*

*H. R. Co.,* 75 Conn. 171, 52 Atl. 610. The rule with regard to the mode of proof of the marriage is the same in both civil and criminal cases. *Erwin* v. *English,* 61 Conn. 502, 23 Atl. 753. In *State* v. *Schweitzer,* 57 Conn. 532, 18 Atl. 787, we held that the marriage certificate was admissible as original evidence in proof of the marriage. In *State* v. *Byrne,* 45 Conn. 273, we held that in proof of the legal existence of a foreign company, the certificate of the insurance commissioner of this State that the company had complied with our laws and was authorized to carry on business here, when the statute required the commissioner to issue such certificate only on proof of these facts sworn to and on a deposit with him of a copy of the charter, was admissible. The rules of evidence relating to the admissibility of exceptions to the hearsay rule are the same in civil and criminal actions.

The same constitutional objection was made to the admission in evidence of a certificate of a public analyst "to prove the alcoholic contents of the 'moonshine' " made competent evidence by statute, as was made to the certificate of the public chemist in the case before us, in the case of *Commonwealth* v. *Slavski,* 245 Mass. 405, 413, 415, 417, 140 N. E. 465. In holding that this evidence did not violate their Bill of Rights, the court, by Chief Justice Rugg, said: "One of the acknowledged exceptions to the face to face rule of evidence is that public records are competent evidence when of probative value respecting an issuable fact. That is an ancient principle of the common law, recognized at the time of the adoption of the Constitution. . . . It cannot be thought that the Constitution was intended to close the door to the legislative department of government to establish new public records with like probative value. Existing public records did not become rigid for all time for evidential purposes.

Power to add to the varieties of public records under the principles of law prevailing at the time of the adoption of the Constitution is conferred upon the General Court under the grant to make, ordain, and establish all manner of wholesome and reasonable laws not repugnant to the Constitution. . . . The determination of the percentage of alcohol in liquor at a specified temperature is the ascertainment of a fact by well recognized scientific processes. . . . The admission in evidence of the record of such a fact made by a public officer pursuant to statutory obligation would be as likely to be accurate as many of the public records which have been held to be admissible."

Instances occur in our statutes, aside from that relating to births, marriages and deaths, to which we have referred, where the certificate of an official is made prima facie proof of the facts which the statute requires it to contain: thus, the certificate of the director of the Connecticut Agricultural Experiment Station, or of the director of the laboratory of the State Department of Health, as to the composition of milk, and the copy of the certificate of a corporation or limited partnership, filed in compliance with the law, as to the facts it contains. General Statutes, § 2465, as amended by Chapter 143 of the Public Acts of 1923, and § 5730. All of the statutes to which we have referred, and others of like character, were enacted, undoubtedly, under the influence of the belief in the trustworthiness of such evidence, proceeding as it does from an official source, and under the sanction of the law, and in the recognition of the fact that the proof obtained from these officials as witnesses would involve disturbance of the public business by the frequent summoning to court of public officials to prove facts found in the public records made by them, or of which they were the official custodians. The evidence is hear-

say, but that does not bar the legislature from making exceptions to the hearsay rule not prohibited by the Constitution, nor has it prevented courts from admitting evidence of this nature which clearly fell within the exceptions to the hearsay rule. The public source from which the copy of the record before us came, the manner in which and the purpose for which it was made, and the complete absence of motive to warp the truth, take the place of that greatest aid to the trustworthiness of evidence, the right of cross-examination, and bring it within an exception to the hearsay rule.

There is no error.

In this opinion the other judges concurred.