STATE OF CONNECTICUT *v.* MICHAEL L. PAULETTE

KING, C. J., ALCORN, HOUSE, COTTER and THIM, Js.

Argued January 9—decided March 5, 1969

*James D. Cosgrove,* public defender, for the appellant (defendant).

*Edward J. Daly, Jr.,* assistant state's attorney, with whom, on the brief, were *John D. LaBelle,* state's attorney, and *George D. Stoughton,* assistant state's attorney, for the appellee (state).

THIM, J. The sole issue presented on this appeal is whether the court committed error by admitting a doctor's report into evidence under the business record exception to the hearsay rule pursuant to § 52-180 of the General Statutes, the pertinent portion of which is set forth in the footnote.[1]

The defendant was charged with rape, and, at the trial, the state sought to introduce a doctor's report which set forth the results of a vaginal examination which had been made of the complaining witness. Shortly after the alleged rape had occurred, the complaining witness was examined at the police station by a police physician. The police physician

---

[1] "Sec. 52-180.  ADMISSIBILITY OF BUSINESS ENTRIES AND PHOTO-GRAPHIC COPIES.  Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of such act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of such business to make such writing or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. Such writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of such evidence, but not to affect its admissibility. . . . The term 'business' shall include business, profession, occupation and calling of every kind."

opined that seminal fluid existed in the posterior vaginal vault; he suggested, however, that a smear of fluid should be obtained to determine whether his opinion was correct. Shortly thereafter, a vaginal examination was conducted at McCook Hospital, and a specimen of fluid was taken from the victim.

During the course of the trial, Dr. Gerald Skopek, the technical director of the laboratory at McCook Hospital, took the witness stand. He had in his possession a four-by-five-inch card containing the name of the complaining witness, her age, sex and the date and time of day when the specimen of fluid was taken from her. On the front of the card there appeared the date, June 14, 1967, a check mark alongside of the phrase "special stain for sperm" and the word "over" written in pencil. The front of the card was signed by a Dr. Buloang. On the reverse side of the card there was written in pencil "many spermatozoa are present. B. Hough." No date appeared on the reverse side of this card.

The director of the hospital laboratory testified that Dr. Hough, a pathologist, had made the report and that it was a record kept in the regular course of hospital business. Moreover, the director testified that the report concerned an examination performed by Dr. Hough and laboratory work done at the hospital in the early morning hours of June 14, 1967, on the complaining witness, that the report was kept in the same manner as were all other pathological records, and that such records were retained on file for seven years. Dr. Hough was unavailable to testify because he was out of the country. The defendant objected to the admission of the report on the grounds that the signature of Dr. Hough had not been verified, that the initials "M.D." did not follow the signature, that the record was hearsay,

and that it was not made in the regular course of hospital business.

There is no merit to the first two grounds of the objection because the director of the hospital laboratory verified the signature which appeared on the report as being that of Dr. Hough, and he also stated that Dr. Hough is a medical doctor.

The report was not inadmissible because it was hearsay. Section 52-180 of the General Statutes permits the admission of business records as an exception to the hearsay rule, and the statute expressly provides that business records which satisfy its requirements shall not be rendered inadmissible by reason of the failure to produce as witnesses the persons who made the records. *State* v. *Ferraiuolo,* 145 Conn. 458, 464, 144 A.2d 41; *D'Amato* v. *Johnston,* 140 Conn. 54, 62, 97 A.2d 893.

The trial court could have reasonably and logically concluded that it was the regular business of the laboratory at McCook Hospital to make medical tests and to keep records of the results of such tests and that the results of such tests were recorded within a reasonable time after the tests had been conducted. Thus, the report was admissible under § 52-180 of the General Statutes. *Szela* v. *Johnson Motor Lines, Inc.,* 145 Conn. 714, 723, 146 A.2d 910; *Weller* v. *Fish Transport Co.,* 123 Conn. 49, 60, 192 A. 317.

In his brief, the defendant claims that the state offered no evidence to establish the time that Dr. Hough recorded the results of his examination of the stain which had been taken from the rape victim. We do not consider this claim on appeal because the defendant did not raise it at the trial. Practice Book § 652; *State* v. *Reid,* 146 Conn. 227, 232, 149 A.2d 698; *Brown* v. *Connecticut Light & Power Co.,* 145

Conn. 290, 294, 141 A.2d 634; *Salvatore* v. *Hayden,* 144 Conn. 437, 443, 133 A.2d 622.

There is no error.

In this opinion KING, C. J., ALCORN and HOUSE, Js., concurred.

COTTER, J. (dissenting). I cannot agree. The report in question was offered and admitted as a hospital report, not as a doctor's report, although it allegedly contained the opinion of a doctor. Section 52-180 of the General Statutes, pursuant to which the report was offered,[1] is similar to the model act on the subject and specifically provides that the record shall be admissible as evidence "if the trial judge finds" that three requirements are present, viz., (1) the memorandum was made in the regular course of business, (2) it was the regular course of business to make such a memorandum and (3) *the memorandum was made at the time when the event occurred or was written a reasonable time thereafter.* (Emphasis supplied.) *Szela* v. *Johnson Motor Lines, Inc.,* 145 Conn. 714, 723, 146 A.2d 910; 30 Am. Jur. 2d, Evidence, § 930. There is no finding in the printed record on appeal to satisfy the third requirement. The evidence printed in the finding clearly shows that no attempt was made to satisfy this ground necessary to qualify the proffered report as a full exhibit. No appendices were filed so that the only available evidence is contained in the finding. This element or requirement as to time was one link in the chain of circumstances which the state had the burden of proving but did not. Where a party offers no evidence as to one of the essential prerequisites to reception of the hospital record, it is

[1] See also General Statutes § 4-104, concerning admission of hospital records, which is not in issue.

inadmissible since there is noncompliance with the statute. *Weller* v. *Fish Transport Co.,* 123 Conn. 49, 60, 192 A. 317; 32 C.J.S. 1035 n.77, Evidence, § 728b. We have stated, for instance, that "the general trustworthiness" of statements made by public officials in a public record made for public use pursuant to law "is found in the circumstances under which the statements are made" and that therefore they are admitted because of the aura of respectability surrounding them which emanates from the circumstances under which they were made, all of which ineluctably leads to a presumption of trustworthiness. *State* v. *Torello,* 103 Conn. 511, 517, 131 A. 429. Evidence of the pertinent circumstances under which the controversial entry was made in the hospital record before us is lacking. There is therefore plain error on the face of the report without satisfactory proof of the relevant and material steps taken in the laboratory which lead in proper sequence to the ultimate expression of opinion found in the report and sought to be admitted as part of that report.

It is axiomatic that proof of connecting or preliminary facts must be shown in order to lay a proper foundation for the admission as an exhibit of a report such as the one under consideration. *Steiber* v. *Bridgeport,* 145 Conn. 363, 366, 367, 143 A.2d 434; see note, 21 A.L.R.2d 1216, entitled "Proof of identity of person or thing where object, specimen, or part is taken from a human body, as basis for admission of testimony or report of expert or officer based on such object, specimen, or part." The writing in ink on the front of the offered report states the surgeon to be Dr. Buloang and is different in character from the writing in pencil on the reverse side, which is signed B. Hough, the doctor, it was

testified, who allegedly made the examination. It was Dr. Louis Tonkin, a police physician, who advised that the victim be taken to McCook Hospital for a smear. The report was introduced through Dr. Gerald Skopek, the director of laboratory services at McCook, who held a Ph.D. degree and not an M.D. degree and who did not make the "report." There is nothing in the record or the evidence before us to show how the "special stain for sperm" was obtained, what was done with it, and whether safeguards were employed to protect the stain to ensure that Dr. Hough examined the same stain. Nor was there any evidence as to how and when Dr. Hough examined what he did. Real evidence must in some way be connected in the manner suggested to establish relevancy and materiality, and its identity must be shown to be that of the article or substance which it purports to be. Wharton, Criminal Evidence (12th Ed.) § 675. The admissibility depends upon the substance being connected with or traced in the train of events to the crime charged. *State* v. *Groos,* 110 Conn. 403, 408, 148 A. 350; see *State* v. *Reenstierna,* 101 N.H. 286–88, 140 A.2d 572. The situation arising because of the paucity of the evidence of this chain of circumstances and the ambiguity in the contents of the offered report is further compounded because Dr. Hough was in Scotland at the time of trial and was therefore unavailable as a witness for either direct or cross examination.

The defendant objected to the admission of the report on what appeared to be four grounds. Two of these were "that it is not a proper business entry" and "that it is hearsay." The report did not meet the admissibility requirements of the statute in at least one respect since the time when the examination of the stain for sperm was made was not indi-

cated on the record, nor was the omission corrected at the trial through testimony or other evidence. The report, without the benefit of the statute to ensure its competency as evidence and to vouch for its trustworthiness, was hearsay and inadmissible.

The exception to the hearsay rule which renders memoranda, made in the regular course of business and under circumstances calculated to ensure accuracy and precluding any motive of misrepresentation, admissible is grounded on the probability of the trustworthiness of records which are the routine reflections of day-to-day business operations. *Palmer* v. *Hoffman,* 318 U.S. 109, 113, 114, 63 S. Ct. 477, 87 L. Ed. 645; *Smith* v. *Baer,* 237 F.2d 79, 89 (2d Cir.); 30 Am. Jur. 2d, Evidence, § 927.

A failure in any respect to satisfy the distinct requirements of the statute, established as safeguards for the introduction of records which would otherwise violate the hearsay rule, affects the very element of trustworthiness which is the basis of the rule. *Palmer* v. *Hoffman,* supra, 113.