## THE STATE v. JOHN W. MOORE, Appellant.

### Division Two, May 8, 1900.

1. **Criminal Law:** WRITTEN EXAMINATION OF DECEASED WITNESS. The evidence, both direct and on cross-examination, of a witness who was dead at the time of the trial, had been reduced to writing at the preliminary trial, in the presence of the defendant, had been read over to him, and signed by him, and filed with the circuit clerk. *Held*, that, following State v. McO'Blenis, 24 Mo. 402, this evidence was properly permitted to be read at the trial. *Held*, also, that its admissibility was not destroyed by the fact that the prosecuting attorney had it in his possession for a time before the trial.

2. **Self-serving Statement.** The admission without objection by the prosecuting attorney of a part of defendant's voluntary statement of how the killing was done, does not entitle the defendant to offer the rest of the statement if that part is self-serving.

3. **Harmless Evidence:** CONVERSATIONS BETWEEN DECEASED AND HIS WIFE. The admission of a conversation between deceased and his wife on the day he was killed, is harmless if it is immaterial and in no wise prejudices defendant's case. Its admission may also be waived by a cross-examination that calls out everything said by her in chief.

4. **Murder:** DEFINING "IN HEAT OF PASSION." If the jury finds the defendant guilty of murder in the second degree it is not error to omit to define the words "in heat of passion" as used in the court's definition of "deliberately."

5. **Instruction:** REASONABLE DOUBT. The instruction on reasonable doubt found in State v. Nueslein, 25 Mo. 111, is again approved, and suggested for a model.

6. ———: CONFLICT IN: SELF-INVITED. If the insertion in an instruction by defendant of words which in that connection are out of place, brings it in conflict with a proper instruction given for the prosecution, it will be held that the excrescent conflicting matter was self-invited and does not constitute error.

Appeal from Dunklin Circuit Court.—*Hon. J. L. Fort,* Judge.

AFFIRMED.

*J. P. Tribble* and *T. R. R. Ely* for appellant.

(1)   The court erred in permitting witness, Matilda Thorn, to testify to a conversation between herself and her husband on the morning of the difficulty, not in the presence of Moore, for the reason, that such conversation forms no part of the *res gestae*, and was not proper matter for the consideration of the jury in this cause.   And because it threw no light whatever upon the actions and conduct of the deceased and defendant afterwards.   And because said testimony was hearsay.   Cole v. McDaniel, 33 Mo. 363; Fogue v. Burgess, 71 Mo. 389; State v. McQuire, 113 Mo. 670; State v. Minoth, 116 Mo. 605; State v. Curtis, 70 Mo. 594; State v. McCoy, 111 Mo. 517.   (2)   The admission of the written testimony of witness Dye, taken at the preliminary trial before G. W. Quinn, in this case, was error, for the reasons:   (a) There was no proper proof that the witness Dye, who had testified before the committing magistrate, was the identical and same person who afterwards died.   (b)   The evidence was, that the paper, or written testimony introduced in evidence, had not been in the possession of the proper person during the interval between the date of the preliminary trial and the trial in the circuit court.   (3)   The court should have permitted witness Brooks to detail the entire statement made to him by the defendant at the time the defendant surrendered to him.   He had been permitted to detail the statement of the defendant down to a point touching the defendant's admission of the killing of the deceased, Thorn, and there, was stopped from further testifying as to any of the details of the killing, although narrated in the same conversation.   Part of the conversation having been admitted by the court and heard by the jury, the defendant was entitled to have the whole conversation given to the jury for what it was worth. State v. Curtis, 70 Mo. 594.

State v. John W. Moore.

_Edward C. Crow_, Attorney-General, and _Sam B. Jeffries_, Assistant Attorney-General, for the State.

The deposition of James Dye taken before the magistrate at the preliminary hearing of this cause, was properly admitted, Dye having died in the meantime. This evidence was given in the presence of accused at the preliminary hearing, the witness was there cross-examined by defendant's attorney, the testimony was reduced to writing, and was subscribed by the witness and sworn to by him before the magistrate. State v. McO'Blenis, 24 Mo. 437; State v. Houser, 26 Mo. 131; State v. Harman, 27 Mo. 120. Defendant ignored the evidence when he stated in his objection to this testimony that there was no proof that this particular witness, who gave the testimony, was dead.

GANTT, P. J.—The defendant was indicted for murder in the first degree at the July term, 1898, of the circuit court of Dunklin county. He was duly arraigned at the January term, 1899, and his plea of not guilty entered. At the same term he was tried and convicted of murder in the second degree and his punishment assessed at ninety-nine years in the penitentiary. His motions for new trial and in arrest were filed, heard and overruled and he appealed to this court.

The indictment is in the approved form and is in all respects sufficient. Indeed it is not attacked on this appeal. The record proper in other respects is without error.

The evidence disclosed the following state of facts. On the ninth day of October, 1897, the defendant shot and killed John Thorn, alias John Vaughan, near the town of Holcomb in Dunklin county of this State. The defendant was a widower about sixty-two years of age, and lived on a farm. He had employed deceased Thorn and the latter's wife to keep house and do other work for him. A disagreement

arose between deceased and defendant, and defendant desired deceased and his wife to leave his premises.

On Friday before the homicide on Saturday, defendant locked his house so that deceased and his wife could not enter. They slept that night at Russell Rice's. Saturday morning deceased left to return a horse he had borrowed from a neighbor named Watts. He owned a horse but he had loaned or hired it to a Mr. Case to work on the levee. He got his own horse about noon and led it to the residence of defendant Moore, whither his wife had returned from Rice's house that morning.

Mrs. Thorn, or Vaughan, testified that when her husband returned he came into the principal inclosure and led his horse to the lot gate and was at the gate when he was shot. She didn't see defendant Moore but heard him say something which she could not distinguish and thereupon her husband answered, "Mr. Moore, we are not trying to bulldoze over you." She saw her husband take hold of the gate to the lot with one hand, and he led the horse with the other. He stepped back two steps and then the gun fired, and immediately she looked and saw Moore, the defendant, take the gun from his shoulder. He was standing about midway of the barn in the lot. Her husband sprang up when he was shot and said to her, "Come here quick." He turned and walked about twenty feet and fell. He died almost instantly. The evidence disclosed no arms on the person of deceased, and his wife testified he had never owned a pistol during their marriage. Moore left immediately after firing the shot.

The testimony of James Dye tended to show that for three hours prior to the killing he and his son-in-law Dobbins remained with defendant at his barn at his request, to await the return of deceased, to see what deceased would do when he came back. When they saw deceased coming leading his horse, defendant got up and stepped across the hall of the barn and reached into the saddle room and got his gun. He

then went into the barn lot.  Before deceased opened the lot gate defendant said to him, "I don't want you in here." Deceased opened the gate and got partly in the lot, and deceased said to him, "Are you going to stay out?" and deceased answered, "We are not bulldozing you," and thereupon he heard the report of the gun, saw deceased turn and call his wife.  Moore saddled his horse and rode off, and witness and his son-in-law, Dobbins, went over to where deceased lay dead on the ground.  He was shot through the breast.  When deceased was shot he had one hand on the gate and held his horse's bridle in the other.

A. L. McDonald testified that he was having some work done on the St. Francois levee and defendant was to furnish him a team and a driver; that he employed deceased to hold the plow.  On or about the 3d or 5th of October he heard a wordy controversy between deceased and defendant as to the right of deceased to assist in the plowing with defendant's team.  Defendant forbade him to touch the plow, and deceased appealed to witness who told deceased he would have to give way.  At that deceased said he could slap the defendant's jaws, and would do it but for his gray hairs.  That ended the dispute at that time.

Deceased left the levee and about two hours later returned and demanded a settlement with defendant. Defendant denied he owed him anything.  Deceased threatened to sue him if he didn't settle.  Whereupon McDonald again acted as mediator.  He took the accounts and there was a balance due deceased of 35 cents on the running account, and his wages for three or five days at 75 cents or $1 per day. Thereupon defendant said, you wait till night and I will get Willie (his son) and settle with you if you will settle. Deceased said, "You have been trying for a week to beat me out of my job and have acted a scoundrel with me." Whereupon Moore, the defendant, drew up his fist as if to strike and deceased said, "Hit."  Defendant said, "No, you hit."

Deceased said, "No, don't let your d—d fist fool you; hit. I think too much of gray hairs to hit you the first lick, but if you hit me I will wear the ground up with you." The difficulty ended with this.

In the evening of that day defendant beckoned McDonald aside and said, "I want to talk to you," and they went about forty feet and sat down on a log. Defendant said he was going to kill Thorn if he didn't get out of his house. Witness replied, "You must not do that." He said he didn't want to be run over. "I told him to take his things out of the house Thorn occupied," and he said he had done that. "Well," said Mc-Donald, "that is sufficient. He can't stay without anything to sleep on or anything to eat out of."

On the day before the killing defendant borrowed a Winchester rifle, calibre 38, from S. J. Winston, and after the killing some one told Winston his gun was in the back room of the postoffice. He went there and got it. It had an empty shell in it. The postmortem disclosed that the ball passed through the right side, the chest and the lung, and came out on the right side of the back bone. It was a mortal wound.

Other witnesses corroborated the evidence for the State as to the occurrence at the levee.

After the defendant shot deceased he rode to the village of Holcomb and told the constable, Mr. Brooks, he had shot and killed Thorn, and surrendered himself.

Two witnesses testified that at one time deceased had a pistol but were so indefinite as to the time that their testimony must have had slight effect on the issue.

Another witness, Jones, saw deceased pushing his handkerchief in his pocket and drew his own conclusion that he had something else under the handkerchief that he took to be a pistol, on the morning of the homicide, and so informed defendant, and defendant testified that Jones so told him.

Some evidence was also given as to threats by deceased to

Vol. 156 mo—14

State v. John W. Moore.

whip the defendant or do him up. Defendant also established a good character as a peaceable citizen.

Numerous errors are assigned to reverse the sentence of the circuit court.

I. The objection to the deposition of James Dye, taken at the preliminary trial before the committing magistrate in the presence of the accused and admitted by the court, is the most important question raised on the record.

It was amply shown by preliminary proof that this witness Dye had testified before the magistrate, that his examination had been reduced to writing in the presence of the defendant, and that he had been cross-examined by counsel for defendant; that his evidence had been read over to him, and signed by the witness, and the examination filed in the circuit clerk's office by the magistrate. It was clearly shown that said Dye was dead at the time of the trial in the circuit court. The objection that the prosecuting attorney had obtained it from the clerk and had it in his possession a portion of the time is without merit. It will be a sad day for our judicial system when the clerk of the court can not entrust a deposition to the law officer of the court. The great question that such a deposition is admissible under the circumstances is not controverted.

That question was settled in the affirmative in the great case of State v. McO'Blenis, 24 Mo. 402. The discussion in that case by the eloquent and learned counsel for defendant, and by Judge LEONARD in the opinion of the court, Judge RYLAND's dissent, constitutes a chapter in our judicial history which will forever command the admiration of the bench and bar of our State. [State v. Houser, 26 Mo. 131; State v. Harman, 27 Mo. 120.] Nothing we can say will add force to the logic or embellish the learning exhibited by the court in the disposition of that case. It is the settled law of this court, and no error was committed in following it.

II. It was within the discretion of the circuit court to permit the witness Riddle to testify, notwithstanding he testified he heard a small portion of the testimony of two witnesses. The learned counsel for defendant cross-examined this witness at great length and at the conclusion moved the court to strike out the whole of his testimony. The action of the court was obviously proper.

III. No error was committed in excluding defendant's self-serving statements made to the constable at the time of his arrest. The doctrine that where the State proves a portion of a statement made by defendant, the whole conversation is admissible, does not apply. Here the defendant was offering his own statement. The fact that the State made no objection to his statement thus offered to show he admitted killing deceased in no manner entitled him to prove what he said was his reason for so doing. [State v. Nocton, 121 Mo. loc. cit. 552.]

IV. The instruction of the court numbered four that if the jury believed that any witness had willfully sworn falsely to any material fact in the case, they were at liberty to reject as untrue the whole or any part of the testimony of such witness, was proper. There was ample basis for it. It is not necessary for us to specify further.

V. Error is assigned on the action of the court in permitting Mrs. Thorn, the wife of deceased, to state that on the morning of the homicide, her husband left home to get a place and as he left told her to say to Mr. Moore, the defendant, they would leave that morning, and she so told defendant. This was objected to because hearsay. The court admitted this statement. Thereupon defendant's counsel took the witness and after a number of questions asked this one: "When was it your husband told you you would leave there that evening, some way or another?" Answer: "It was when he came back from taking the horse. When John (deceased)

came back and fixed to go to town he said he would go to town and make arrangements about getting a place, and he told me when he started, if Mr. Moore said anything more about us leaving, to tell him we would move that evening."

Defendant thus brought out the same matter of which he now complains.

Strictly speaking, of course, the conversation between deceased and his wife were incompetent, but for two reasons this does not constitute reversible error. In the first place, it is entirely harmless. Whether Thorn was going to get a place or not, it did not prejudice defendant's case, as it threw no light upon his subsequent actions at the time he was shot. It was entirely competent to prove, however, that Mrs. Thorn notified defendant that morning that they were going to leave that day. The other conversations, out of his presence, were not of course, notice to him of that intention. But secondly: When defendant elicited the same conversation by his own question he removed his objection thereto. There is no inference to be drawn from this testimony that defendant would have had no right to defend himself if Thorn afterwards so acted as to cause defendant to apprehend deceased was about to kill him. The conversation was incompetent, but it was immaterial, and did not prejudice defendant's case.

VI. Another assignment is that the court erred in not defining "in a heat of passion" as used in its definition of the word "deliberately." Inasmuch as the jury found the defendant guilty only of murder in the second degree such failure can not affect the merits of this appeal. [State v. Eaton, 75 Mo. loc. cit. 591; State v. Andrew, 76 Mo. 104.] The instruction defining murder in the second degree has often been approved by this court and all of the terms used in that instruction were correctly defined.

VII. It is urged that the instruction given by the court of its own motion numbered 6 and that given for the defend-

ant on the subject of reasonable doubt, are antagonistic and conflicting, but a consideration of the two discloses no such conflict. That given for the state is correct and it was wholly unnecessary to give that asked by defendant. The courts should avoid as far as possible a multiplication of instructions and one good instruction on reasonable doubt is all that is necessary in any case. This court again approves the formula as to an instruction on reasonable doubt found in State v. Nueslein, 25 Mo. 111, and we add that an adherence to a well-approved precedent will save the trial courts and this court much unnecessary labor in examining new departures from well-settled law. If the defendant succeeded in getting more than he was entitled to it certainly gives him no ground for complaint in this court.

VIII. The claim that the punishment fixed by the jury is cruel and excessive, is wholly without merit. The jury might have convicted defendant of murder in the first degree without exciting a suspicion of passion or prejudice.

IX. It remains to consider one more assignment. It is urged that the 7th instruction given by the court of its own motion in these words:

"7. The court instructs the jury that the right to defend one's self against danger is a right which the law concedes and guarantees to all men; therefore, the defendant may have killed deceased, Thorn, alias Vaughn, and be innocent of any offense against the law. If at the time he shot and killed deceased he had reasonable cause to apprehend on the part of deceased a design to do him, the defendant, some great personal injury, and there was reasonable cause for the defendant to apprehend immediate danger of such design being accomplished, and to avert such apprehended danger to himself, defendant shot deceased, *at the time* he did so he had reasonable cause to believe, and did believe, it necessary for him to shoot deceased to protect himself from such apprehended

State v. John W. Moore.

danger, then the shooting was not felonious, but was justifiable, and you will acquit him. It is not necessary to this defense that the danger should have been actual or real, or that danger should have been impending and immediately about to fall on the defendant. All that is necessary is that defendant had reasonable cause to believe, and did believe, these facts. But before you acquit on the ground of self-defense, as outlined above, you ought to believe defendant's cause of apprehension was reasonable. Whether the facts constituting such reasonable cause of apprehension have been established by the evidence you are to determine, and unless the facts constituting such reasonable cause have been established by the evidence in the cause, you can not acquit him on the ground of self-defense, even though you may believe that defendant really thought he was in danger of great bodily harm or of losing his life,"

Is in conflict with the 3d instruction given for defendant, at his request, as follows:

"3. The court instructs the jury that the right to defend one's self against danger, is a right which the law concedes and guarantees to all men; therefore, the defendant may have killed deceased and be innocent of any offense against the law. If at the time he shot deceased he had reasonable cause to apprehend on the part of the deceased an intention to do him, the defendant, some great personal injury, and there was reasonable cause for defendant to apprehend immediate danger of such intention being carried into effect, and to avoid such apprehended danger, defendant shot deceased, and at the time he did so he had reasonable cause to believe and did believe it necessary for him to shoot deceased to protect himself from such apprehended danger, and in that case, the shooting was not felonious, but was justifiable, and you will acquit him. It is not necessary to this defense that the danger should have been actual or real or that danger should have been impending and immediately about to fall on the defendant. All that is

necessary is that defendant had reasonable cause to believe, and did believe, these facts. But before you acquit on the ground of self-defense against threatened danger you ought to believe defendant's cause of apprehension was reasonable. The law, permits a man to act on reasonable appearances and fear of danger of great bodily harm; and no man is compelled to stand with his arms folded until it is too late to strike, and in this case, if it has been shown by the facts and circumstances in evidence at the time defendant shot deceased the actions and conduct of deceased were such as to give to defendant, Moore, reasonable cause to believe, and that defendant did believe, that deceased was about to take the life of defendant, or do him some great bodily harm, and then and there fired the shot to prevent such apprehended danger, and at that time had good reason to believe, and did believe, that it was necessary for him to shoot deceased, Thorn, to prevent such apprehended danger, then you should acquit the defendant on the ground of self-defense, although such shooting resulted in the death of Thorn; or if the testimony on the question of self-defense has been sufficient to create in your minds a reasonable doubt of the guilt of defendant, you will give him the benefit of such doubt and acquit him."

It will be observed that in so far as these two instructions relate to the law of self-defense they are the same in principle, and almost identical in language. They do not differ except that defendant's instruction concludes with an instruction on reasonable doubt. As the court had already given two instructions on reasonable doubt it was obviously unnecessary to do so again, but the reasonable doubt instruction appended to defendant's instruction was no part of his instruction on self-defense and ought not to have been given in that connection, and if this caused a conflict it was self-invited, and defendant can not complain on self-defense.

There was no error in the court's instruction save and except the evidence did not justify an instruction on that

subject. The State's evidence showed the deceased was holding the lot gate with one hand, and the bridle to his horse with the other, when defendant shot him from a distance of seventy-five feet at least.

It is true defendant in general words testified he shot defendant to protect his life, but there was no substantial evidence even by himself upon which to found any reasonable apprehension that deceased was about to do him any great bodily injury. We are impressed with the view that the circuit court accorded defendant every right guaranteed by the law and was very favorable to him in its rulings. The jury could not have done less than they did, and there are no errors in this record justifying us in reversing the judgment.

The judgment is affirmed. *Sherwood* and *Burgess, JJ.*, concur.