J. W. DENBO, Appellant, v. HERBIE BOYD, ANNIE E. BOYD, TREXLER and HALL, H. E. WARFEL, WM. P. ELMER and PARLIN ORENDORF MACHINERY COMPANY, Defendants; WM. P. ELMER and H. E. WARFEL, Respondents.

**Springfield Court of Appeals, May 22, 1916.**

1. **LAND TITLES: Limitations: Color of Title and Possession.** While color of title is not necessary under the thirty-year Statute of Limitation, lawful possession for one year as distinguished from that of a "squatter" is necessary.

2. **MORTGAGES: Grantee of Mortgagor: Relation to Mortgagee.** The grantee of a mortgagor of land is not in such relation to the holder of the mortgage as to forbid his acquiring and setting up an outstanding title to the land adverse to the mortgagee.

3. **EVIDENCE: Death: Hearsay Evidence of.** Hearsay evidence of death derived from the immediate family of the deceased may be sufficient evidence of death.

4. ———: ———: ———: **When Insufficient.** Hearsay evidence of death from one not related to deceased or deriving his information from the family or relatives, considered insufficient to establish the fact of death or show that a deed was a forgery because made after the death of one purporting to execute same.

Appeal from Dent County Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED.

*McGee & Bennett* for appellant.

*William P. Elmer* for respondents.

STURGIS, J.—This is a suit to foreclose a mortgage on 160 acres of land in Dent County. The maker of the secured note and others interested in the land were made parties defendant on constructive notice by publication, but only the present owner of the land, Warfel, and the holder of a second mortgage, Elmer, filed answer and defended the case. They won in the trial court and the plaintiff has appealed.

The answer alleges that defendant Warfel is in possession of the land and "that plaintiff's title under which he claims said mortgage is a forged and false title in that the deed from Richard M. Boyle to E. E. Young is a false and forged deed;" that the secured note was given as part of the purchase price of the land and contains a clause that if the title to said land of the maker of said mortgage and note should fail or prove void, then the note and mortgage should be void. This note was made by Herbie Boyd to Emery Tolley on the sale of this land by Tolley to Boyd and the clause referred to, after reciting that the note is given for part of the purchase price of this land, reads: "But in case the title under a deed this day made to me to said real estate by Emery Tolley and Myrtle Tolley, his wife, is void or voidable, then this consideration, for which this note is given, fails, and this note shall be void and of no effect."

The plaintiff had been the owner of this land and was the vendor of said Tolley and the vendee of Young, the grantee in the alleged forged deed. The evidence is sufficient to sustain a finding that Tolley, who had a deed from plaintiff, and sold and conveyed to Boyd, taking back this note and mortgage, was in fact acting for plaintiff in the transaction and plaintiff took the note and mortgage as on a sale of his own land, though made to his man. Tolley and assigned by him to plaintiff. Boyd, however, did not sell the land direct to the defendant Warfel, but there was an intervening owner, a real estate firm of Trexler and Hall, who sold and conveyed to defendant Warfel. The evidence also tends strongly to show that plaintiff, while the owner of this land and of course before he took this note and mort-

gage, was informed that there was much doubt as to the genuineness of his title and that there was a strong suspicion, at least, that the recorded deed from Boyle to his grantor Young was a forgery; that this caused the plaintiff to sell the land soon thereafter through his man Tolley and thereby got this note and mortgage on the same. There is no evidence, however, that plaintiff was interested in the land any further or that he had anything to do with the sale by Boyd to Trexler and Hall, or Trexler and Hall to defendant Warfel. Both the defendant and Trexler and Hall bought subject to plaintiff's mortgage and their deeds so recite. The alleged forged deed from Boyle to Young is a warranty regular in form and acknowledgment. The abstract does not show but the evidence indicates that all the subsequent conveyances are quitclaim deeds.

The defendant Warfel says that when he bought the land the abstract showed a regular chain of title and that he, living in Illinois, as did the plaintiff and the intermediate grantee, had no knowledge or information as to any deed in the chain of title being forged. When he learned this later by advice of his attorney he set about to perfect his title. He did this by getting a squatter on the land to become his tenant and after two or three years brought suit and obtained a decree quieting title in him under our thirty year Statute of Limitations, section 1884, Revised Statutes 1909. This suit was against Boyle and his unknown heirs and some others alleged to be claiming some interest in the land. The plaintiff there, defendant here, alleged that he had been in possession of this land more than one year under color of title duly recorded. The defendant Warfel now claims title solely by reason of this decree and undertook to show, as defeating plaintiff's mortgage, that one link in his chain of paper title was a forgery and thereby destroy the whole chain subsequent to Boyle.

Several matters are discussed in the briefs, one of which is that in acquiring title by limitation of thirty years color of title is not necessary (Abeles v. Pillman, 261 Mo. 359, 168 S. W. 1180), although this defendant

so alleged in the petition. This contention is correct, but defendant's color of title was the means by which he converted the possession of the squatter on the land, a mere intruder, into a "lawful possession," that is, the possession of one "claiming to own the same in good faith, believing that he is the owner." This color of title was the basis and proof of defendant's lawful possession on which his decree was based. Moreover, defendant's possession was through such squatter who became his tenant and in the absence of color of title defendant's possession would be limited to the part in actual possession of this tenant. The defendant's color of title, granting that the deed so claimed was a forgery, was an important factor in obtaining the decree.

We can agree with defendant that the grantee of a mortgagor of land is not in such relation to the holder of the mortgage as to forbid his acquiring and setting up an outstanding title to the land adverse to the mortgagee. [Bush v. White, 85 Mo. 339, 358; Cummins v. Powell, 97 Mo. 524, 536, 10 S. W. 918.] This, however, and the question whether defendant was holding adverse to the mortgagee may not be important as plaintiff's note explicitly contracted that if the title of the then mortgagor failed, the note would be void and of no effect.

The point on which defendant failed to sustain his defense is that there is no competent evidence that the Boyle deed to Young is a forgery. Boyle acquired title by deed dated October 16, 1872. The record does not show where Boyle resided other than the alleged forged deed dated December 15, 1906, gives his residence as Pittsburg, Pennslyvania. The deed was acknowledged before Pearl Abernathy, a notary public, at East St. Louis, Illinois, with his notarial seal affixed. The only evidence bearing on the question of this deed being a forgery is that when plaintiff was informed of the rumor or suspicion that such was the case, he hunted up this notary and found him to be a "negro politician of East St. Louis, Illinois." Plaintiff testified that the negro told him that he had taken this acknowledgment, basing the identity of the man making the acknowledg-

ment on his being so introduced to him by a friend. In a sort of incidental way it appears that the man Young was tried for the crime of forgery and that both plaintiff and the negro testified at that trial—plaintiff on being asked if he did not testify on that trial as he did on this one said he did. What was the result of that trial or what the negro notary testified then was not shown here and properly so. Nor did the negro testify here. There is nothing, therefore, in these facts to show the deed was a forgery or to impeach the acknowledgment, but it indicates that such evidence might be had. The only other evidence on this point is that of the witness Elmer, a lawyer residing at Salem, Missouri, who had informed both plaintiff and defendant of his belief that the deed was a forgery and had brought suit for defendant to quiet his title. He was allowed to testify, over plaintiff's objection, that it was not competent to prove the death of Boyle by reputation, as follows: I told defendant that in my judgment the deed was forged, as I had been hunting for Richard M. Boyle ten or twelve years before that and was unable to find him. I know *from reputation* that Richard M. Boyle is dead and had been dead for a long time before this deed from Richard M. Boyle to Young was made. I have no positive knowledge, though, that Boyle is dead. The deed from Boyle to Young has been proven to be a forgery, I think. Plaintiff claimed to me that the negro told him that he took the acknowledgment of the man that was represented to be Boyle. I had him to swear that he had seen Abernathy, the notary, and that Abernathy had protested to him that he had really taken the acknowledgment. I had plaintiff to prove and he testified at the criminal trial of Young that the negro said that he had taken the acknowledgment of the deed of Boyle who was introduced to him by a friend of his; that he took the acknowledgment on the faith of that introduction and the negro denied he had a conversation with plaintiff, and the plaintiff swore he did.

Defendant contends that it is proper and competent to prove the death of a person by reputation and

cites some authorities, none of which go to the extent of holding this evidence to be competent. It is seen that the witness lives in Salem, Missouri, and does not claim to have ever seen or known the alleged deceased party, or even any relative or acquaintance of his; or to have ever lived or been in the same city or State where such person lived or had lived, or to have made inquiry there. He says he knows he was dead prior to making the alleged deed *from reputation* but when or where such reputation existed, or when or where or how he acquired knowledge of it is not shown other than that he had been hunting for him ten or twelve years before. It is not even shown where he made inquiry for him. He does not even show that he ever found anybody who had ever known the alleged deceased or of him or of his death. This evidence is far from coming within the rule stated in 4 Enc. of Evidence, 51, cited by defendant, that ''hearsay evidence of death derived from the immediate family of the deceased may be sufficient evidence of death.'' The rule is stated by the United States Circuit Court of Appeals in Northern Pacific Ry. v. King, 181 Fed. 813, 914, as follows: ''It has been held by many courts that the death of an individual, though disconnected with any question of pedigree, and for whatever purpose sought to be established, may be proved by hearsay, subject to the *same restrictions* that are applicable to cases where matters of *pedigree* are involved; but no case has been cited, and we know of none, which holds that under circumstances like these here presented, it is competent to prove the basic and controverted fact by hearsay testimony, pure and simple.'' This case states that the restrictions applicable to cases where matters of pedigree are involved are stated by the United States Supreme Court in the case of Stein v. Bowman, 13 Pet. 207, 219, 10 L. Ed. 129, to be these: ''But this rule is limited to the members of the family, who may be supposed to have known the relationships which existed in its different branches. The declarations of these individuals, they being dead, may be given in evidence to prove pedigree; and so is reputation, which is the hearsay of those who may

be supposed to have known the fact, handed down from one to another, evidence." In Metropolitan Life Ins. Co. v. Lyons (Ind.), 98 N. E. 824, 828, the rule is stated thus: "The rule as to the admission of hearsay evidence to prove the death of an individual extends only to the general reputation in the family of such person and among his kindred. [Anderson v. Parker, 6 Cal. 197; DuPont v. Davis, 30 Wis. 170.] . . . The declarations of persons not members of the family of the person whose death is the subject of inquiry are not competent to prove the death of such person. [Jackson v. Browner, 18 Johns. (N. Y.) 37; Dudley v. Grayson, 6 T. B. Mon. (Ky.) 259; Wilson v. Brownlee, 24 Ark. 586, 91 Am. Dec. 523.] . . . When an occurrence has taken place in a family such as a marriage, a birth, a death, or any other fact in reference to lineage or pedigree, and when members of the family afterwards speak of such facts and make declarations in reference thereto, such declarations so made are admissible, after the death of the person making them, to prove such facts. Such evidence generally pertains to remote facts which cannot be proved by living witnesses, and tends to prove the tradition and history of the family as to such facts. A review of the authorities will be found in Re Estate of Hurlburt, 68 Vt. 366, 35 L. R. A. 794, and it will be found that this rule is restricted to proving reputation of death by a surviving member of the family and that the reputation must be derived from the declarations of deceased members of the family. General reputation, even among the friends and acquaintances of the deceased, is not admissible. 1 Greenleaf's Evidence (12 Ed.), 103, says that "general repute in the family proved by the testimony of a surviving member, has been considered as falling within the rule." [See, also, Sheidegger v. Terrell, 149 Ala. 342, 43 So. 26; Fidelity Mutual Life Ins. Co. v. Mettler, 185 U. S. 308, 46 L. Ed. 922; and the note to Eisenlord v. Clum (N. Y.), 12 L. R. A. 838.]

We have not overlooked but find it not important under the issues made and tried that defendants claim as showing a break in the chain of title that the orig-

inal entryman of this land is named McKinsey, while the grantor in the next conveyance is McKinney. If any point is to be made on this fact, if it be a fact, it should be presented by the pleadings and the point ruled on by the trial court.

The case will therefore be reversed and remanded. *Robertson, P. J.,* and *Farrington, J.,* concur.