**STATE of Missouri, Respondent,**

**v.**

**Melvin Leon JACKSON, Appellant.**

**No. KCD 26083.**

Missouri Court of Appeals, Kansas City District.

May 3, 1973.

Robert L. Rodarte, Kansas City, for appellant.

John C. Danforth, Atty. Gen., David Robards, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, C. J., and SHANGLER, PRITCHARD, SWOFFORD and WASSERSTROM, JJ.

SWOFFORD, Judge.

Appellant was convicted on January 31, 1972 of the sale of narcotics (heroin) and was sentenced to five (5) years. He urges reversal upon the ground that the court below erred in permitting the state to offer and read into evidence parts of the deposition of one Elaine Kaptur as part of the state's case and as substantive proof of the charged offense. He asserts that thereby he was deprived of his constitutional right of confrontation as guaranteed by the Sixth Amendment of the Constitution of the United States, and Article I, Section 18(a), V.A.M.S., of the Constitution of Missouri. He further asserts that the deposition of Kaptur was otherwise inadmissible because there was no proper showing that she was unavailable (dead).

This matter presents factual problems and questions of law never before directly ruled upon by the appellate courts of this state.

The witness, Elaine Kaptur, was an informer for the Kansas City, Missouri police department, working with the Narcotics Division on a case-to-case basis and occasionally with the Federal Bureau of Narcotics and Dangerous Drugs. She was paid for this work on a cash basis of unpredetermined and unfixed amounts. She was or had been a drug addict and at the time here involved was under Methadone treatment.

The state's case against the defendant may be thus summarized:

On December 19, 1970, Jerome H. Gershman, a federal agent, in the company

of Kaptur, made contact with the defendant for the purpose of making a "buy" of heroin. After some driving around to various localities and some "cloak and dagger" maneuvers, Gershman gave Kaptur $50.00 in bills (the numbers of which had been previously recorded) with which to purchase 5 capsules of heroin. At another location on the public streets, he testified he saw Kaptur hand the defendant the money, in his view but not in his presence. She returned to Gershman's car with an envelope containing 4 capsules, which were later analyzed by a chemist connected with the Kansas City police department (who testified for the state) and found to be heroin. Gershman did not see the transfer of the envelope from the defendant to Kaptur. No arrest was made of defendant until May of 1971, over 5½ months after the claimed purchase of the drug.

At the trial, December 21, 1971, Gershman was interrogated as follows by the prosecuting attorney:

"Q. All right. And, sir, do you know the whereabouts of Elaine Kaptur at this time?

A. She is deceased.

Q. And, sir, did you have occasion to attend her funeral?

A. Yes, I did."

This was the only evidence offered as to Kaptur's unavailability as a witness as the basis for the use of her deposition as part of the state's case.

James William Eapman, a member of the Narcotics Division of the Kansas City, Missouri police department, testified for the state that he was the surveilling officer on December 19, 1970, whose duty it was to watch the movements of Gershman and Kaptur from a separate vehicle. He had no direct participation in the "buy" but did identify defendant as being in contact with Gershman and Kaptur that day and saw him in conversation with Kaptur.

The state read the Kaptur deposition as it pertained to this defendant. She was examined by then defense counsel Haggerty. While this questioning by Haggerty is characterized in the state's brief as "vigorous cross examination" we find it rather perfunctory and brief and many of Kaptur's answers not specific and somewhat vague. As it pertained to this defendant, it consisted of only 4 deposition-spaced pages. She did, however, testify that she gave the $50.00 supplied her by Gershman to the defendant and received in return four (4) capsules identified as the ones analyzed by the police and offered into evidence by the state.

A motion to suppress this deposition was filed by defendant and an evidentiary hearing was held thereon prior to opening statements or the introduction of any evidence. The motion to suppress was based upon the claimed violation of Article I, Section 18(b) of the Missouri Constitution, relating to depositions in felony cases.

We have checked the original file from the Circuit Clerk's office as we are empowered to do under Rule 81.12(c) (formerly Rule 82.12(c)), V.A.M.R., and the facts therein together with those presented at the evidentiary hearing on the motion to suppress are as follows:

At the defendant's preliminary hearing in the Magistrate Court he was represented by Mr. Phillip H. Schwarz of the Legal Aid and Defenders Society of Kansas City, Missouri. Schwarz does not appear as counsel thereafter.

After defendant was bound over to the circuit court for trial, he was represented by Mr. Gary Haggerty, also of Legal Aid. Haggerty filed a Motion to Take Deposition as a Poor Person, which was not signed nor sworn to by the defendant and which was, according to his testimony hereafter referred to, filed without his knowledge or consent. The witness, Elaine Kaptur, was named in the motion. The court sustained this motion and on June 24, 1971, Haggerty caused a single Notice to

Take Depositions to be served upon the prosecutor's office in this and four (4) other pending cases. In this notice, Elaine Kaptur was listed as one of the witnesses to be deposed beginning on July 12, 1971. On July 15, 1971, the deposition of Kaptur was taken on behalf of all five defendants (including this defendant) before Cynthia M. Berg, Shorthand Reporter, in the courtroom of Division No. 11, Jackson County Courthouse. The appearances, aside from the reporter and witnesses, show that Mr. John Peak appeared for the state and that Mr. Gary Haggerty appeared for *all defendants*. The deposition shows a Stipulation between the parties (as in civil cases) of a waiver of presentment and signature. Kaptur was examined by Haggerty about several "buys" from others and the alleged one from defendant. The deposition was transcribed by the reporter, contains her jurat, and was filed. At the time the deposition was taken, the defendant was in the Jackson County Jail in the same building a few floors above the deposition site.

The defendant testified that he had no discussion with Haggerty about the Kaptur deposition nor did he sign any agreement or consent that it be taken; that he only saw Haggerty on one occasion for a short period of time; that he had no knowledge that Kaptur's deposition was to be taken, and that had he known about it, he would hav insisted that he be present; that he was not present at the Kaptur deposition and does not know who was there; that he gave no consent to any waiver of presentment and signature; that he never saw the deposition or read it; that he does not know if Kaptur is deceased; and that he first learned about the deposition from his present counsel, who was privately employed by his family. The court records show that present counsel entered his appearance for the defendant November 15, 1971.

The trial court overruled defendant's motion to suppress the deposition of Kaptur and permitted the state to read those portions pertaining to this defendant to the jury, including her statements (over defendant's specific objections) that she had purchased drugs from this defendant both before and after the incident of December 19, 1970. These latter statements were completely outside the indictment or charge here involved.

█ The constitutional considerations raised under Point I of appellant's brief do not appear to have been properly raised at each stage of the proceeding during the trial nor in defendant's motion for a new trial so as to be properly preserved for our review. Nor are we requested to review such as plain error under Rule 27.20(c). However, we do so *sua sponte* for the reason that federally guaranteed constitutional rights of the defendant are involved.

The Sixth Amendment of the Constitution of the United States provides in pertinent part:

"In all criminal proceedings, the accused shall enjoy the right * * *; to be confronted with the witnesses against him; * * *"

█ This Sixth Amendment is held to be applicable to all criminal proceedings in the state courts by reason of the application of the Fourteenth Amendment of the Constitution of the United States prohibiting the deprivation of life or liberty without "due process of law". Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L. Ed.2d 934 (1965); Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966); Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

This same right is protected by the Constitution of Missouri, 1945, in Article I, Section 18(a), which provides in part:

"That in criminal prosecutions the accused shall have the right * * *; to meet the witnesses against him face to face; * * *"

The reason for the protection of the right of confrontation in criminal proceedings was stated in the case of Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409, by the Supreme Court in 1895 at l. c. 242–243, 15 S.Ct. at l. c. 339, as follows:

> "The primary object of the constitutional provision in question *was to prevent depositions or ex parte affidavits,* such as were sometimes admitted in civil cases, *being used against the prisoner* in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." (Emphasis supplied)

■ The more recent cases while adopting this principle seem to emphasize the fact that confrontation and the right of the defendant to cross examine the witness are synonymous and inseparable. Pointer v. Texas, supra; Douglas v. Alabama, supra. Such confrontation and right to cross examine have been held to be among the fundamental guarantees of life and liberty and the essential and indispensable safeguards to a fair trial and due process of law. Kirby v. United States, 174 U.S. 47, 19 S. Ct. 574, 43 L.Ed. 890 (1899); Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931); Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); 5 Wigmore on Evidence, Section 1397 (Third Edition, 1940); Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); Graham, The Right of Confrontation and the Hearsay Rule; Sir Walter Raleigh Loses Another One, Criminal Law Bulletin, Vol. 8, No. 2, March, 1972.

■ It would seem obvious that in most situations adequate satisfaction of both the right of confrontation and of cross examination cannot be accomplished by either the defendant or his counsel *alone.* Counsel could "confront" a witness endlessly without accomplishing the constitutional objective and the defendant would rarely be capable of any effective cross examination. *Both* defendant and counsel are necessary to turn the spotlight of truth and moral suasion on a witness whose testimony may mean the difference between life and death, freedom or confinement, innocence or guilt. This safeguard is clearly recognized and stated in Article I, Section 18(b) of the Constitution of Missouri, 1945, infra. See also: 23 C.J.S. Criminal Law § 1001, pages 1058–1059.

In addition to the steadfast adherence to the general rule that the presence of the defendant is essential to any satisfaction of the confrontation safeguard, the Supreme Court in Pointer v. Texas, supra, recognized the necessity that counsel also be present. There, the witness Phillips had testified at a preliminary hearing where the defendant was physically present, without counsel, and did not cross examine. Phillips thereafter left Texas for California. The court held that a transcript of the testimony could not be used by the state at the trial because defendant had been denied his constitutional right of confrontation and cross examination. The court said, 380 U.S. l. c. 407–408, 85 S.Ct. l. c. 1069–1070:

> "The case before us would be quite a different one had Phillips' statement been taken at a *full-fledged hearing* at which petitioner had been represented *by counsel* who had been given a complete and adequate opportunity to cross-examine. * * * Because the transcript of Phillips' statement offered against petitioner at his trial had not been taken at a time and under circumstances affording petitioner *through counsel* an adequate opportunity to cross-examine Phillips, its introduction in a federal court in a criminal case against Pointer would have amounted to denial of the privilege

of confrontation guaranteed by the Sixth Amendment. * * * it follows that use of the transcript to convict petitioner denied him a constitutional right * * " (Emphasis supplied)

■ Situations which call for exceptions to this rule have arisen where a witness is deceased or actually unavailable. Testimony of such a witness may be admissible if he has given his testimony under oath in a prior judicial proceeding with the defendant present and afforded the right of cross examination. As the court said in Mattox v. United States, supra, 156 U.S. at 1. c. 244, 15 S.Ct., at 1. c. 340, under such circumstances:

"The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination."

Barber v. Page, 390 U.S. 719, 722, 88 S. Ct. 1318, 20 L.Ed.2d 255 (1968).

Missouri has long adhered not only to the general rule but to the above-noted exception. In State v. Barnes, 274 Mo. 625, 204 S.W. 267, 268 (1918), the court stated the exception:

" * * * the sole prerequisites to its (transcripts) admission being, in the absence of any question as to its correctness: (1) A showing that the witness is then dead; (2) *the presence at the time of the taking of testimony of the defendant*; and (3) his right to cross-examine the witness." (Emphasis supplied)

See also: State v. McO'Blenis, 24 Mo. 402 (1857); State v. Able, 65 Mo. 357 (1877); State v. Moore, 156 Mo. 204, 56 S.W. 883 (1900); State v. Butler, 247 Mo. 685, 153 S.W. 1042 (1913).

In the case before us, the then counsel for defendant took the deposition of witness Kaptur as he was authorized to do under Rule 25.10 and Rule 25.11 under the same procedural method as in civil cases.

Since 1945, the state also has the right under certain limitations to take depositions in a criminal case. The constitutional limitations placed upon the state were articulated in Article I, Section 18(b), Constitution of Missouri, 1945 (substantially the same as Rule 25.13) which provides:

"Upon a hearing and finding by the circuit court in any case wherein the accused is charged with a felony, that it is necessary to take the deposition of any witness within the state, other than defendant and spouse, in order to preserve the testimony, and on condition that the court make such orders as will fully protect the rights of *personal confrontation* and *cross-examination* of the witness by defendant, the state may take the deposition of such witness and either party may use the same at the trial, *as in civil cases,* provided there has been substantial compliance with such orders. The reasonable personal and traveling expenses of *defendant and his counsel* shall be paid by the state or county as provided by law." (Emphasis supplied)

The reference in the constitutional provision, Article I, Section 18(b) and in Rule 25.13 to the use of depositions taken by the state "as in civil cases" relates to Rule 57.-29 and Section 492.400 RSMo 1969, which provides for the use of a deposition when the witness is dead.

Two recent decisions of the Supreme Court of Missouri, while not factually the same as the case now before us, do express judicial concepts helpful in the solution of this appeal.

In the case of State v. Brookins, 478 S. W.2d 372 (Mo.1972), the defendant was convicted of assault with intent to ravish one Nancy Tresslar. Tresslar's deposition was taken by counsel for the defendant under the authority of Rules 25.10 and 25.11. She placed defendant at the scene of the crime and further testified that she was moving to the state of Texas. Her deposition was offered by the state and received

in evidence over the objection of defense counsel that its introduction violated defendant's constitutional rights under the Sixth Amendment.

In reversing the conviction, the court held that there was no evidence that the state had made any effort to secure Tresslar's attendance and that she was therefore not "unavailable" within the exception as noted in Mattox v. United States, supra. The court emphasized the existence of the "Uniform Law to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings" Act. Section 491.400–491.450 RSMo 1969.

The court held that the defendant had been deprived of his constitutional right of confrontation as defined in Barber v. Page, supra. The court then said, 478 S.W.2d 1. c. 375:

"We recognize that the practical effect of Barber v. Page, supra, upon our Rule 25.12 (until it is amended) is that a deposition, if otherwise admissible, may be used if it appears: (1) that the witness is dead, or (2) that the party offering the deposition has made a good-faith effort to obtain the presence of the witness at trial.

We question whether the deposition testimony of Nancy Tresslar, *not taken under the authority and within the limitations of Article I, Section 18(b), Const. of Missouri,* V.A.M.S., and V.A.M.R. 25.13, was 'otherwise admissible' in behalf of the State at trial. However, the question was not raised, has not been briefed, and we do not decide it on this appeal." (Emphasis supplied)

In the case of State of Missouri, Respondent v. Granberry, Appellant, 491 S.W.2d 528 (Mo.Sup.1973), the defendant appealed from a conviction of murder in the first degree. One Hackett was charged with the defendant. He made a video-taped statement implicating the defendant and the charge against him was dismissed. He had also given a deposition in a companion case involving other defendants wherein he implicated the defendant. He was called as a witness by the state and repudiated the facts contained in his taped statement and deposition linking the defendant with the crime. The state claimed surprise and asked for and was given leave to cross examine Hackett on his prior statements and to argue to the jury the implication of defendant therein.

The court held that such prior statements were admissible only to impeach but had been erroneously used by the state as substantive evidence and reversed the conviction and remanded for retrial.

The court then noted the new provision of the 1945 Constitution of Missouri permitting the state to take depositions in criminal cases, Article I, Section 18(b), and stated that the interests of the public and the accused will be better served and protected,

" * * * if we adopt the following positions.:

(1) we reaffirm the Pulitzer v. Chapman position[1]

(2) if a witness is present at trial (whether he testifies at trial or not), his deposition, *if taken by the State under the provisions of Art. I, § 18(b), supra,*

---

1. Pulitzer v. Chapman, 337 Mo. 298, 85 S.W.2d 400 (1935) held that prior contradictory statements of a witness given under oath in a *deposition* in a civil cause where he was subject to cross examination could be used for impeachment at trial and may be accepted as substantive proof of the facts stated so far as they are competent and of probative value but that *extra judicial statements* were only ad- missible for impeachment purposes. See also: Woelfe v. Connecticut Mut. Life Ins. Co. of Hartford, Conn., 234 Mo.App. 135, 151, 112 S.W.2d 865, 874 (1938); State of Missouri v. Kinne, 372 S.W.2d 62 (Mo.1963). This was denominated the "orthodox rule" and reaffirmed by a majority of the Supreme Court in Granberry.

is not made inadmissible by the hearsay rule, and, so far as it is admissible under other rules of evidence, may be used by the State and 'accepted as substantive proof of the facts stated' in the deposition; and

(3) if a witness is not present at trial, and it appears he is dead or that the State has made a good-faith effort to obtain his presence at trial (State v. Brookins, Mo.Sup., 478 S.W.2d 372, 375), his deposition, *if taken by the State under the provisions of Art. I, § 18(b), supra*, is not made inadmissible by the hearsay rule, and, so far as it is admissible under other rules of evidence, may be used by the State and 'accepted as substantive proof of the facts stated' in the deposition." (Emphasis supplied)

It appears from *Granberry*, that had the deposition of Kaptur been taken by the state under Article I, Section 18(b) of the Missouri Constitution of 1945 and the constitutional rights of defendant fully protected and the witness shown to be dead, the state could have used the deposition. Its use or admissibility would not be restricted by the hearsay rule but only by other orthodox rules of evidence. But such is not the situation in the case before us.

■ The deposition of Kaptur was not taken by the state under Article I, Section 18(b). The defendant's testimony on the motion to suppress stands undisputed and we must accept such as true for present purposes. Thus accepted, it startlingly appears that none of the defendant's constitutional rights under the Sixth and Fourteenth Amendments of the Constitution of the United States and Article I, Section 18(a) of the 1945 Constitution of Missouri were protected. Neither did the defendant waive his constitutional rights in the sense of "an intentional relinquishment or abandonment of a known right or privilege". Barber v. Page, supra; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); State v. Harmon, 243 S.W.2d 326, 329 (Mo.1951). The deposition was, under the circumstances of this trial, *unusable* by the state to convict the defendant of the criminal offense with which he was charged—because it was *constitutionally* and *basically unacceptable* for any purpose. The court below erred in permitting its use by the state.

Since this case must be remanded for the above reasons, it would not be inappropriate and might be helpful for us to express our views upon two other matters pertaining to the Kaptur deposition.

The remaining point raised by appellant in his brief is that there was no proper showing of Kaptur's unavailability (death).

■ The fact of death must be proved as any other evidentiary fact and the burden rested upon the state to establish that fact. Magers v. Western and Southern Life Insurance Co., 335 S.W.2d 355 (Mo.App. 1960); Sanderson v. New York Life Insurance Co., 239 Mo.App. 688, 194 S.W.2d 221 (1946).

It is doubtful that the testimony of witness Gershman, above quoted, is of sufficient probative force to establish Kaptur's death and sustain the burden of the state in that regard. The only evidence of death was Gershman's statement that Kaptur was "deceased" and that he attended her funeral. No statement of dates, place or identification was proffered nor any corroboration produced in support of the officer's statement. Chapter 193 RSMo 1969 requires that death certificates be made and filed with the state as permanent records, and Section 193.170 RSMo makes such certificates prima facie evidence of death. None such was offered in this case. There are many other types of evidence which have been held sufficient to establish death. Denbo v. Boyd, 194 Mo.App. 121, 185 S.W. 236 (1916); 15 A.L.R.2d 1438–1439; 22 Am.Jur.2d, Death, Section 299–303, pp. 817–819.

■ As above noted, Kaptur testified as to purchases of drugs from defendant

made both before and after the alleged purchase of December 19, 1971, which formed the basis of the present indictment against the defendant. There being no entrapment issue in this case, no acceptable reason was proffered by the state justifying the admission of such evidence, such as, motive, intent, identification, or other judicially approved reasons for the acceptance of such evidence. The receipt of such was prejudicially erroneous. State v. Reed, 447 S.W.2d 533 (Mo.1969).

The conviction of the defendant is reversed and this cause remanded.

All concur.